**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CHRISTOPHER GREGG,
DIANE GREGG, and TRAVELPATH CANADA
LIMITED, a Canadian Corporation,

      Plaintiffs,

      v.                                        Case No.: 18-CV-60192

IRL A. SOLOMON, HELENE SOLOMON,
CAROL DUDLEY, JIL SHAPIRO, RICK SICILIA,
BALISTRERI REALTY, INC., a Florida Corporation,
VORDERMEIER MANAGEMENT COMPANY, d/b/a
VMC Realty, a Florida Corporation, and BAY COLONY
PROTECTIVE ASSOCIATION, INC., a Florida
Corporation,

      Defendants.
_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs, CHRISTOPHER GREGG, DIANE GREGG, and TRAVELPATH

CANADA LIMITED, by and through their undersigned counsel, hereby file this Second

Amended Complaint for Damages against Defendants, IRL A. SOLOMON, HELENE

SOLOMON, CAROL DUDLEY, JIL SHAPIRO, RICK SICILIA, BALISTRERI REALTY,

INC., VORDERMEIER MANAGEMENT COMPANY, d/b/a VMC Realty, and BAY

COLONY PROTECTIVE ASSOCIATION, INC.

## GENERAL ALLEGATIONS

### Nature of Action

1.      This is an action for damages in excess of the jurisdictional minimum of this

Court, exclusive of costs and attorney's fees, which arises out of wrongful acts or omissions

1

committed by Defendants and/or their agents or employees in Broward County, Florida.  The claims asserted herein are as follows: one (1) count for Breach of Written Contract against Defendants IRL A. SOLOMON and HELENE SOLOMON; two (2) counts for Negligence, and (1) one count for Negligent Misrepresentation against Defendant CAROL DUDLEY; two (2) counts for Negligence and one (1) count for Negligent Misrepresentation against Defendant JIL SHAPIRO; two (2) counts for Negligence against Defendant RICK SICILIA; two (2) counts for Vicarious Liability against Defendant BALISTRERI REALTY, INC; two (2) counts for Negligence against Defendant VORDERMEIER MANAGEMENT COMPANY, d/b/a VMC Realty; and two (2) counts for Negligence against Defendant BAY COLONY PROTECTIVE ASSOCIATION, INC.

## Conditions Precedent

2.      All conditions precedent to the maintenance of this action have been satisfied, or have been waived or excused.

## The Parties

3.      Plaintiffs CHRISTOPHER GREGG and DIANE GREGG (the "Greggs"), are a married couple, and are citizens of Canada.

4.      Plaintiff TRAVELPATH CANADA LIMITED ("Travelpath Canada" or the "Company"), is a Canadian Corporation, which is domiciled and maintains its principal place of business in Ontario, Canada.  The Greggs are the principals of, and owners of all beneficial interest in, Travelpath Canada.  Plaintiff Christopher Gregg is the President of the Company.

5.      Defendants IRL A. SOLOMON and HELENE SOLOMON (the "Solomons" or "Sellers") are, and at all times material were, citizens of the State of Florida, and residents of Broward County, Florida.  The Solomons were the sellers of the real property that is the

subject of this action.

6.     Defendant CAROL DUDLEY ("Dudley"), was, at all times material, the licensed real estate broker and/or sales associate representing Plaintiffs in connection with the purchase of the real property and house situated thereon, located at 2 Compass Isle, Fort Lauderdale, Florida, 33308. (the "Compass Isle Property" or the "subject property").

7.     Defendant BALISTRERI REALTY, INC. ("Balistreri Realty") is a Florida for profit corporation, with its principal place of business located in Pompano Beach, Florida.

8.     Defendant RICK SICILIA ("Sicilia") was, at all times material, the Manager for Defendant Balistreri Realty at Balistreri Realty's offices in Ft. Lauderdale and/or Pompano Beach, Florida.

9.     Defendant JIL SHAPIRO ("Shapiro") was, at all times material, the licensed real estate broker and/or sales associate representing the Sellers (the Solomons) in connection with the sale of the Compass Isle Property.

10.     Defendant BAY COLONY PROTECTIVE ASSOCIATION, INC. ("BCPA") is a Florida non-profit corporation, duly organized and existing under the laws of the State of Florida, and is, and at all times material was, the Homeowners Association (HOA) governing the Bay Colony subdivision/community wherein the subject Compass Isle Property is located.

11.     Defendant VORDERMEIER MANAGEMENT COMPANY, d/b/a VMC Realty ("Vordermeier") was, at all times material, the property manager for Defendant BCPA.

12.     At no material time was there direct contractual privity between Plaintiffs, Christopher and/or Diane Gregg, and any of the Defendants herein (except the Solomons), within the meaning of section 95.11(4)(a), Florida Statutes.  Further, at no material time was there direct contractual privity between Plaintiff Travelpath Canada (the assignee of the

Greggs), and any of the Defendants. Plaintiffs are not aware of any direct contract between any of the Plaintiffs herein and any of said Defendants (other than the Solomons) that was in force at the time of the alleged negligent acts and/or omissions alleged against the Defendants in this action, and/or at any material time. Moreover, to the extent that paragraph 14 of the "**AS IS Residential Contract for Sale and Purchase**" of the subject property (copy attached hereto as Exhibit A) (the "Contract") states that Buyer and Seller will not rely on representations of "Broker" as to facts "materially affecting property value," Plaintiffs are not contending in this action that any Defendant made any representation to Plaintiffs materially affecting the value of the subject property, nor are Plaintiffs seeking any relief herein based on diminution of the value of the property. Furthermore, the provision of paragraph 14, which states, "For purposes of this Paragraph 14, Broker will be treated as a party to this Contract," is insufficient to give rise to a relationship of direct contractual privity between any Plaintiff and Defendant Shapiro, Dudley or Balistreri Realty, which would be a prerequisite, under Florida law, to the application of section 95.11(4)(a), Florida Statutes to the claims asserted by Plaintiffs against said Defendants. The subject matter of Paragraph 14, which is narrow, and limited to a disclaimer of liability for broker representations as to facts materially affecting property value and to certain indemnification provisions not relevant or material to this action, does not encompass a disclaimer of, or indemnification for, any of the claims asserted by Plaintiffs against the Defendant realtors herein pursuant to Chapter 475, Florida Statutes. To the contrary, Paragraph 14 expressly provides that, "This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended." (See Exh. A hereto). The Contract expressly provides that the "**PARTIES**" thereto are the "Buyer," Christopher and Diane Gregg, and the "Seller," Irl A. and Helene Solomon, and the Contract is signed, as well

as initialed throughout, solely and exclusively by the Greggs and the Solomons. (*Id*.) (Capitals and bold highlighting in original).  Any contractual relationship, if any, arising between any Plaintiff herein and "Broker" by virtue of Paragraph 14 of the Contract, is confined to the limited purposes recited in said paragraph, and, is *ipso facto*, indirect, peripheral and ancillary to the direct contract for sale and purchase of the subject property between the Buyer and the Seller.

## Jurisdiction and Venue

### A.    Personal Jurisdiction

13.    This Court has personal jurisdiction over all the Defendants, in that at the time of the acts and omissions giving rise to this action and/or at the present time, Defendants were/are residents and domiciliaries of the State of Florida, and/or Defendants were/are doing business in the State of Florida, and/or the wrongful acts and omissions giving rise to this action were committed by Defendants within the State of Florida.

### B.    Subject Matter Jurisdiction

14.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S. C. § 1332(a)(2), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of the State of Florida and citizens of Canada.

### C.    Venue

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that the Defendants reside and/or are domiciled in the Southern District of Florida, specifically Broward County, Florida.  Furthermore, Broward County, Florida is where a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and where the property that is the subject of the action is situated.

## The Contract

16.     In March 2015, pursuant to the "**AS IS Residential Contract for Sale and Purchase**" (the "Contract"), the Greggs contracted with the Solomons to purchase the subject Compass Isle Property.  The Contract was executed by the Greggs on March 19, 2015, and by the Solomons on March 20, 2015. (See Exh. A hereto).  Among other provisions, there was a handwritten provision inserted under paragraph number 20 of the Contract, states: "**Seller will deliver a copy of the HOA documents to the buyer via its broker within 5 days of Effective Date.**" (*Id.*)

## Relevant Pre-Closing E-Mail Communications Among the Parties

17.     In March, 2015, after the Contract was executed, various e-mail communications transpired among the various parties.  The content of these e-mails, or relevant portions thereof, is set forth below:

**March 21, 2015 (Saturday) at 6:29 AM –** email from Carol Dudley to Diane Gregg, Christopher Gregg, and Rick Sicilia, who was the Manager for Defendant Balistreri Realty's Pompano Beach and Lighthouse Point Sales Centers. [Ms. Dudley wrote, in pertinent part: "I am trying to get the home inspection done on Tuesday…"]

**March 21, 2015 at 12:16 PM** – email from Christopher Gregg to Carol Dudley, Rick Sicilia and Diane Gregg.  [Mr. Gregg wrote: "You do not have the authority to schedule a home inspection until our lawyer has reviewed the Homeowners Agreement and we have found it acceptable.  It is the wording of the HOA regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase…"

**March 21, 2015 at 14:31:15** – email from Jil Shapiro to Carol Dudley [Ms. Shapiro

wrote: "Please find attached the Bay Colony Bylaws per contract request.  I will be sending them in 2 emails as they are large."]

**March 21, 2015 at 12:02 PM** – email from Carol Dudley to Diane Gregg forwarding the preceding (14:31:15) email and attachment from Jil Shapiro to Carol Dudley [Ms. Dudley did not write any message to Ms. Gregg, but just forwarded Ms. Shapiro's above-mentioned March 21, 2015 email]

**March 21, 2015 at 14:34:33** – email from Jil Shapiro to Carol Dudley [Ms. Shapiro wrote: "Attached HOA Docs."]

**March 21, 2015 at 12:04 PM -** email from Carol Dudley to Diane Gregg, forwarding the preceding (14:34:33) email and attachment from Jil Shapiro to Carol Dudley [Ms. Dudley wrote: "Please find more documents."]

**March 21, 2015 at 14:39:04** – email from Jil Shapiro to Carol Dudley [Ms. Shapiro wrote: "Please find attached Bay Colony Bylaws as per contract request.  I will be sending them in 3 emails as the files are too big…"]

**March 21, 2015 at 12:09 PM** – email from Carol Dudley to Diane Gregg, forwarding the preceding (14:39:04) email and attachment from Ms. Shapiro to Ms. Dudley [Ms. Dudley wrote to Ms. Gregg: "Forwarding more documents for you.  I think there is one more to come."]

**March 24, 2015 at 8:37 AM** – email from Christopher Gregg to Carol Dudley, Rick Sicilia, and Diane Gregg [Mr. Gregg wrote: "After a review of the HOA documents provided by Carol [Dudley] on Mar. 21 we have been advised there is no clause prohibiting paying and non-paying guests from occupying the premises at 2 Compass Isle under the ownership of the Greggs or an assigned company.  Diane [Gregg] has requested confirmation that **all** of the

HOA documents have been sent to us.  As of now we have not been provided the confirmation from either the vendor's realtor or Carol…The Greggs are acting in good faith that we are in possession of all HOA documents, which having been reviewed show no impact on paying and non-paying guests from accessing and occupying the premises at 2 Compass Isle.  The above does not negate our ongoing request for confirmation that we are in receipt of all HOA documents…" (emphasis in original)].

**March 24, 2015 at 9:00 AM (or shortly before)** – email from Carol Dudley to Christopher and Diane Gregg [Ms. Dudley wrote: "I have been working for you this morning and had a long chat with the seller's realtor [Jil Shapiro]. Everything Jil sent me and I forwarded to you were the **FULL HOA** docs.  I have asked the seller's realtor to double check and to send everything again so we do not miss anything at all..." (Emphasis in original)].

(Copies of the foregoing e-mails are attached hereto as Composite Exhibit B).

18.     In light of repeated communications from the Greggs prior to the closing, both written and oral, Defendants Dudley, Shapiro and Sicilia knew or should have known how vital it was to the Greggs and any assignee company of the Greggs to determine whether there were any HOA documents containing wording that purported to have an impact on use of the subject property for short term and vacation rentals.  This was to be the Plaintiffs' first purchase of real property in the United States, and the Greggs repeatedly made it known to said Defendants prior to the closing, that if any such document(s) existed, they and/or their assignee would not go forward with the closing and purchase of the property.

### <u>The Failure of Defendants to Provide the Bay Colony HOA Rules to Plaintiffs</u>

19.     None of the Defendants herein, nor anyone acting on their behalf, provided the Greggs with all HOA documents at any time prior to the closing on the subject property.

20.     As it turned out, the HOA documents provided to Plaintiffs prior to closing were incomplete, as they did not include the Bay Colony HOA Rules, which purported, *inter alia*, to govern "Rentals" of properties in the Bay Colony development, including the subject Compass Isle Property.  Specifically, Rule Number 11 of the Bay Colony Rules provides as follows:

"**Rentals** - All renters must appear before the Board of Directors for Board approval. Three references must be presented to the Board at least two weeks before said meeting. A minimum of three board members must be present at this meeting. To set up a time to meet with the Board, the prospective renter or the person who is renting the property shall contact the management company for a specific meeting time."

(Copy of Bay Colony Rules, as they existed in March 2015, attached hereto as Exhibit C).

21.     Plaintiffs are informed and believe, and thereon allege, that the incomplete set of HOA documents provided to Plaintiffs prior to the closing was procured by Defendant Shapiro from Defendant Vordermeier. (See Doc. 20, p. 8, par. #19).  Shapiro, then, in turn, provided said documents to Defendant Dudley. (See emails of March 24, 2015, noted above, Comp. Exh. B hereto).

22.     When Plaintiffs were finally provided with the Bay Colony HOA Rules more than two months after the closing on the subject property, they realized that Rule 11 of the Bay Colony Rules would have the practical effect of precluding Plaintiffs from procuring any short-term and/or vacation renters of the Compass Isle Property, including, but not limited to, Plaintiffs' clients, customers, business associates and/or friends from Canada, where Plaintiffs reside.  Such individuals are obviously not going to travel down to Florida from Canada, at substantial expense and inconvenience in order to go through the onerous pre-screening process prescribed by Rule 11, in the hope that they will be approved for a short-term rental or vacation stay by the Bay Colony Board of Directors at some indeterminate point in time, if

at all, then travel back to Canada to await the Board's (positive or negative) decision, which even if positive, would be exceedingly unlikely to coincide with the desired date(s) of the rental, either from the point of view of Plaintiffs, or the prospective renter(s).

23.     When Plaintiffs received and reviewed Bay Colony Rule 11, they realized that there would be (and there currently remains) no viable or practicable way for Plaintiffs to schedule which prospective short term or vacation renters would be able to occupy the property when, and/or whether such occupancy would overlap with a time(s) that other prospective renters might be desirous of renting the property, or with a time that the Greggs, themselves, might choose to occupy the home; in short, a logistical nightmare.

24.     Rule 11, the existence of which Plaintiffs had no idea at the time of the purchase of the subject property, appears to make it impossible, as a practical matter, to ever rent the property for short-term or vacation rental purposes, thus frustrating a primary purpose for which the property was purchased. A primary intended use of the subject property was to rent the property to clients, customers, business associates and/or friends of Plaintiffs from Canada on a short term and vacation rental basis, thus providing luxury short term and vacation lodging in a highly desirable and attractive location, and promoting good will, while at the same time, being able to use such rental revenues to recoup some or all of the substantial carrying costs, costs of maintenance, repair and improvement, and other costs and/or expenses in connection with the property.  At all material times, Plaintiffs Christopher Gregg, Diane Gregg and Travelpath Canada and their affiliates were, and remain, in the business travel and luxury vacation business, with their avowed mission being to "offer an uncomplicated, yet sophisticated approach to business travel management that not only ensures a high level of service for all of your company's travel needs but also manages your travel in a way that saves

you time, trouble and money." (See, e.g., http://www.travelpath.com/about-travelpath/).  As a practical matter, Plaintiffs' are precluded, by virtue of Rule 11, from using a property costing two and three-quarter million dollars (**$2,750,000.00**) for a primary intended purpose for which it was purchased. (See Settlement Statement re June 15, 2015 closing on the subject Compass Isle property, attached hereto as Exhibit D).

25.    Ironically, prior to the closing on the subject property, Plaintiffs were provided with all the HOA documents except for the one document that was indispensable to them and to their decision of whether to consummate the purchase of the subject property (i.e., the Bay Colony Rules, Exhibit C hereto), a document which contained the very "wording" as to rentals they exhaustively sought to confirm did not exist, and that they were led to believe, in good faith, did not exist.

26.    It was not until August 19, 2015, over two (2) months following the June 15, 2015 closing on the property, that Plaintiffs received a copy of the Bay Colony Rules from Defendant BCPA's property manager, Defendant Vordermeier, and thus learned of Bay Colony Rule 11.  In this regard, on August 19, 2015, Defendant Vordermeier sent an email, per Lorelei Nathan, to Christopher Gregg, copy to Suzy Vordermeier Waterhouse, with attached prospective amendments to the then-existing Bay Colony HOA Rules.  The email stated: "Good afternoon.  Pursuant to your request please find copy of the Bay Colony Protective Association Rules to be voted on at our next meeting." (Copy of August 19, 2015 email and attachment from Vordermeier to Plaintiffs attached hereto as Exhibit E).  A review of the copy of the Bay Colony Rules attached to said August 19, 2015 email from Defendant Vordermeier reveals various cross-outs, proposed additions, and highlighted words. (i.e. the prospective amendments to the Rules).  Nevertheless, Rule number 11 regarding "**Rentals**,"

remained substantially the same, with only minor, immaterial changes thereto.  In other words, although the Bay Colony Rules may have been subsequently amended in September 2015, Rule 11, was essentially unchanged by such amendment.  Thus, the same purported restrictions and screening requirements in connection with Rentals that existed in Rule 11 subsequent to said amendments, were contained in the version of the Bay Colony Rules that existed prior to the amendments at the time the Greggs signed the Contract and at the time of the closing and the purchase of the property by Plaintiff Travelpath Canada.

27.     No Defendant stated or represented to Plaintiffs at the time the Bay Colony Rules were finally provided to Plaintiffs, on August 19, 2015, or at any other time, that the then-existing Bay Colony Rules, including Rule 11, which were apparently promulgated in 1978, were, or might possibly have been, invalid or not lawfully enacted, as has been alleged, for the first time, by Defendant Shapiro in this action. (See Doc. 20, pp. 6-8).

28.     In fact, not only did Defendants Vordermeier and BCPA belatedly provide a copy of the Bay Colony Rules to Plaintiffs in August 2015, including Rule 11, but subsequent to receiving said Rules, Plaintiffs were directly informed by Defendant BCPA, that Rule 11 regarding Rentals would be strictly enforced.

29.     Plaintiffs are informed and believe, and thereon allege, that at least some Defendants herein will assert that, although there are undoubtedly valid restrictions on rentals in effect (i.e. Rule 11) at minimum, by September 2015, nevertheless, prior to and at the time of the purchase of the Compass Isle Property, the Bay Colony HOA Rules, including Rule 11 regarding "Rentals," were not valid. (See Doc. 20, pp. 6-8).  Plaintiffs are further informed and believe that said Defendants will assert that, given this alleged invalidity of the HOA Rules existing prior to and at the time of the subject purchase, Plaintiffs were technically provided,

with all or the full HOA documents, notwithstanding that the document purporting to embody the Bay Colony Rules was not included among the documents provided to Plaintiffs. (*Id*. at p. 6, par. #13).  Plaintiffs contest the assertion that the Bay Colony Rules existing prior to and at the time of the purchase were invalid and/or not lawfully enacted, but even assuming its truth, such assertion would be immaterial.  Pursuant to the statutory and/or common law duties by which the various Defendants were bound, (or, in the case of the Solomons, a contractual duty), the document purporting to contain the Bay Colony HOA Rules should have been provided to Plaintiffs.  If such document had been provided, Plaintiffs would not have gone forward with or authorized the purchase of the subject property.  In other words, *whether valid or invalid*, the document embodying the Bay Colony Rules, was, in fact, an HOA document to which Plaintiffs were entitled, as they had repeatedly demanded that they be provided with all HOA documents, and in particular those which could have an impact on paying and/or non-paying guests from accessing and occupying the subject property.  As Plaintiff Christopher Gregg made abundantly clear in his email to Defendant Dudley of March 21, 2015, "**It is the <u>wording of the HOA</u> regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase.**" (See Comp. Exh. B hereto) (Emphasis supplied).

30.    Irrespective of any Defendant's contention as to the alleged former invalidity of the Bay Colony Rules, the fact remains that if Plaintiffs had been provided with the document purporting to contain such HOA Rules prior to the closing, as they should have been, and they had seen the wording of Rule 11, they would not have authorized or gone forward with the purchase/closing.  Furthermore, even assuming the truth of any assertion that Rule 11 was not valid prior to the closing and for several months thereafter, Defendants do not dispute

that, at minimum, as of sometime in September 2015, within approximately three (3) months of the closing on the subject property, Rule 11 became valid and enforceable.  As such, Travelpath Canada paid $2.75 million for a property that it never would have purchased in the first instance had Plaintiffs seen the wording of Rule 11.

31.   On August 20, 2015, the day after Plaintiffs received the above-mentioned August 19, 2015 email from Defendant Vordermeier with the Bay Colony Rules attached thereto, Plaintiff Diane Gregg sent an email to Defendant Dudley, stating as follows:

> **"Chris and I have just received a set of rules (attached) that we've never seen before.  We hope this doesn't cause a problem in the future, but wanted to keep you informed**."

(Copy of August 20, 2015 email from Diane Gregg to Dudley attached hereto as Exhibit F).

On that same day (August 20, 2015), Defendant Dudley responded with an email, subject, "RE: Bay Colony Rules," in which Defendant stated, in pertinent part:

> **"How lovely to hear from you I was wondering how your home is coming on. Thank you for keeping me informed.  This should have been given to you earlier and if I were you I would say something to them.  I can't see a problem with these things as I know you will register your rental clients and guests in advance of them staying there…"**

(Copy of August 20, 2015 email from Carol Dudley to the Greggs attached hereto as Exhibit G).

While admitting that the Bay Colony Rules "should have been given to you earlier," it is inexplicable how Defendant Dudley could not "see a problem with these things," and attempted to gloss over and, in fact, suppress Plaintiffs' exceedingly legitimate concerns with unwarranted assurances.  Contrary to Defendant Dudley's disingenuous statement that, "I know you will register your rental clients and guests in advance of them staying there," Rule 11 purports to require far more than mere "registration" of Plaintiffs' rental clients and guests.

To reiterate, Rule 11 of the Bay Colony Rules stated, and still states:

"**Rentals** - All renters must appear before the Board of Directors for Board approval. Three references must be presented to the Board at least two weeks before said meeting. A minimum of three board members must be present at this meeting. To set up a time to meet with the Board, the prospective renter or the person who is renting the property shall contact the management company for a specific meeting time."  (See Exh. C hereto).

### The Greggs' Assignment of Their Rights Under the Contract to Travelpath Canada

32.     On or about June 15, 2015, the Greggs assigned their rights under the Contract with the Solomons to Travelpath Canada, pursuant to a written Assignment of Contract for Purchase of Real Estate (the "Assignment"), and Travelpath Canada expressly accepted such rights as assignee, by and through its President and co-owner (along with Diane Gregg), Plaintiff Christopher Gregg.  (Copy of Assignment from Greggs to Travelpath Canada attached hereto as Exhibit H).  All Defendants herein were aware of this assignment prior to consummation of the closing on the subject property, that the Greggs were the owners of Travelpath Canada and that Christopher Gregg was its President, and that upon the consummation of the closing, Travelpath Canada would become the legal owner of the property.

### The Closing on the Subject Compass Isle Property

33.     The closing on the subject Compass Isle Property occurred on or about June 15, 2015.  (See Settlement Statement, Exhibit D hereto).

34.     Plaintiffs were essentially blindsided by the failure of the Defendants herein to provide them with all Bay Colony HOA documents, in particular, the single most important and crucial document, that being the document purporting to be the Bay Colony HOA Rules.

**Failure of Solomons to Attempt to Settle Contract Dispute through Mediation**

35.     Paragraph 16 of the Contract, entitled, "DISPUTE RESOLUTION," provides, in relevant part, that "Unresolved controversies, claims and other matters in question between buyer and seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ('Dispute Resolution') will be settled as follows:…(b) Buyer and Seller shall attempt to settle disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediations and Chapter 44, F.S., as amended (the 'Mediation Rules')…Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter…"  However, notwithstanding Plaintiffs' attempts to amicably resolve their claim against the Sellers (the Solomons) arising out of the Contract, specifically by having their counsel contact the Solomons by letter, dated July 31, 2017, in which Plaintiffs fully apprised the Solomons of their claim under the Contract and attempted to arrange a mediation of the matter, the Solomons failed to respond in any manner, or to otherwise cooperate in having the matter resolved in mediation.  (Copy of July 31, 2017 Letter from Greggs' Counsel to the Solomons, attached hereto as Exhibit I).  Accordingly, Plaintiffs have instituted the within action in this Court.

**Recovery of Costs and Attorney's Fees Under the Contract**

36.     Paragraph 17 of the Contract provides, in relevant part, that, "In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation."  Plaintiffs have retained the undersigned counsel to represent them in this matter, and have incurred, and will continue to incur, costs and fees, including attorney's fees,

in an attempt to vindicate their rights, and Plaintiff Travelpath Canada, as assignee of the Greggs' rights under the Contract, should it prevail in its claim against the Solomons, is entitled to recovery of all such costs and fees.

**Count I**
(**Plaintiff Travelpath Canada Against the Solomons
for Breach of Written Contract**)

37.     Plaintiff Travelpath Canada realleges and incorporates paragraphs 1 through 17, and paragraphs 19 through 36, above, as though fully set forth herein.

38.     Defendants IRL A. SOLOMON and HELENE SOLOMON (sellers), and each of them, breached the Contract (Exhibit A hereto), specifically, paragraph 20, by failing to deliver a copy of the HOA documents to the buyers (the Greggs) via the sellers' broker (or otherwise), within 5 days of the Effective Date of the Contract.  While some HOA documents were provided to Plaintiffs, the documents provided were missing the Bay Colony HOA Rules, as more specifically alleged hereinabove.  Moreover, the Solomons failed to provide a full set of the HOA documents to Plaintiffs at any time whatsoever.  Paragraph 20 of the Contract reasonably implies that the Solomons had a contractual obligation to provide all existing HOA documents to the purchasers and/or to any successor in interest.  At all material times, the Solomons knew or should have known (a) that Plaintiffs wanted to determine if there were any requirements/restrictions that could have an impact upon use of the property for short term and vacation rentals of the property; (b) that Plaintiffs were seeking definitive confirmation in that regard; and/or (c) that Plaintiffs would not authorize or consummate the purchase of the property were they to learn of such requirements/restrictions, or purported requirements/restrictions.

39.     As assignee of the buyers, pursuant to the written assignment of June 15, 2015

17

(Exhibit H hereto), Travelpath Canada became the transferee, owner and successor in interest to all rights possessed by the Greggs under the Contract.

40.     As a direct and proximate result of the Solomons' Breach of the Contract, Plaintiff Travelpath Canada, has sustained, and continues to sustain, damages, for which Plaintiff is entitled to recovery from the Solomons.  Such damages include, without limitation, sums expended on renovations, repairs, improvements and maintenance of the Compass Isle Property, real estate taxes and insurance, furnishings for the home thereon, costs associated with financing, closing costs, loss of use, and lost opportunity costs, with such damages collectively totaling over $1,000,000.00, and according to proof.  All of said damages flowed foreseeably from, and as a consequence of, the breach.  The Solomons are jointly and severally liable to Travelpath Canada for such damages.

41.     If Plaintiff Travelpath Canada prevails on its Breach of Contract claim in this action, it is entitled to recover costs and fees, including reasonable attorney's fees, from the Solomons, pursuant to paragraph 17 of the Contract.

**WHEREFORE** Plaintiff Travelpath Canada prays for relief as follows against the Solomons:

(a)  Damages in the amount of $1,000,000.00, or according to proof;

(b)  Costs and Expenses of Suit;

(c)  Reasonable Attorney's Fees; and

(d)  Such other and further relief that the Court may deem proper and just.

## Count II

**(Plaintiffs Christopher and Diane Gregg Against Defendant Carol Dudley for Negligence Based on Breach of Statutory Duty Owed to Plaintiffs as Transaction Broker Pursuant to Fla. Stat. § 475.278)**

42.     Plaintiffs Christopher and Diane Gregg reallege and incorporate paragraphs 1 through 34, above, as though fully set forth herein.

43.     Pursuant to section 475.278(1)(b), Florida Statutes, "It shall be presumed that all licensees are operating as transaction brokers unless a single agent or no brokerage relationship is established, in writing, with a customer." At all times material to this claim, Defendant Dudley operated as a transaction broker within the meaning of the statute, as neither a single agent, nor a no brokerage relationship, was established in writing with Plaintiffs.

44.     Pursuant to Fla. Stat. § 475.278(2), the statutory duties of Defendant Dudley to the Greggs in connection with the purchase and sale of the Compass Isle Property included the duty to use "skill, care, and diligence in the transaction," and Defendant owed the Greggs a duty to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances.

45.     Defendant Dudley knew that a primary, if not the paramount, purpose for the Plaintiffs' acquisition of the Compass Isle Property was to use it for short term and vacation rentals, and that it was vital to the Greggs that there were no documents, the wording of which purported to restrict or impede such use. Plaintiffs were emphatic in informing Defendant that they needed confirmation that "**all** of the HOA documents have been sent to us." (See March 24, 2015 e-mail from Christopher Gregg to Defendant Dudley and Rick Balistreri, Comp. B hereto) (emphasis in original). The Greggs made it unequivocally clear to Defendant Dudley that they were proceeding in good faith that there were no HOA documents that could have an

impact on paying and non-paying guests from accessing and occupying the premises at 2 Compass Isle. (*Id*.). Further, the Greggs were adamant in admonishing Defendant Dudley that, "You do not have the authority to schedule a home inspection until our lawyer has reviewed the Homeowners Agreement and we have found it acceptable. It is the wording of the HOA regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase…" (*Id*.)

46.     Given her duty to act with skill, care and diligence in the transaction, Defendant Dudley had a duty to provide to the Greggs with any and all HOA documents containing rules purporting to impact Plaintiffs' intended use of the property. Further, Defendant had a duty to make a reasonable investigation into the HOA documents and to specifically determine whether there were any Rules that could potentially impact the intended use of the property by the Greggs or an assignee company, and/or to carefully review the HOA documents that she was providing to the Greggs to determine whether, in fact, the HOA Rules were included. A reasonably prudent and competent realtor engaged in the business of representing buyers in the acquisition of residential property in South Florida, particularly residential property within a planned community governed by a homeowners' association, would or should know, that HOA documents include Rules of the association that could impact the buyer's use or intended use of the property.

47.     Defendant Dudley failed to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances, and breached her duty to the Greggs to exercise skill, care and diligence in the transaction in the following ways: (a) by failing to provide the Greggs with the full HOA documents, specifically including the Bay Colony Rules, prior to the closing; and/or (b) by failing to make a reasonable investigation or

inquiry to determine whether or not there existed any documents purporting to be HOA Rules, particularly those that might impact Plaintiffs' intended use of the property for short term and vacation rentals; and/or (c) by failing to ensure that the HOA documents she had provided to the Greggs were comprised of all the HOA documents, specifically including the Bay Colony Rules; and/or (d) by failing to carefully review the HOA documents she provided to the Greggs to ensure that such documents included the HOA (i.e. Bay Colony) Rules.

48.     It was reasonably foreseeable to Defendant Dudley that her breach of duty to exercise skill, care and diligence (i.e. negligence) would create in the Greggs a false sense of security as to the ability to utilize the property for short term and vacation rentals without restrictions thereon, and but for Defendant's negligence, the Greggs would not have authorized the closing or purchase of the subject property and would not have proceeded to make substantial expenditures and incur significant lost revenues and other financial losses in connection with the property, according to proof.

49.     As a direct, foreseeable and proximate result of Defendant Dudley's negligence, the Greggs have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

50.     Defendant Dudley's conduct, as more particularly alleged hereunder, constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct.

Accordingly, the Greggs are entitled to recovery of punitive damages from Defendant.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for the following relief against Defendant Dudley:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c) Costs and Expenses of Suit; and

(d) Such other and further relief that the Court may deem proper and just.

<u>**Count III**</u>
(**Plaintiffs Christopher and Diane Gregg Against Defendant Sicilia for Negligence**)

51.     Plaintiffs Christopher and Diane Gregg reallege paragraphs 1 through 34, above, as though fully set forth herein.

52.     At all times material, Defendant Sicilia was employed as a Manager for Defendant Balistreri Realty, and was in communication with the Greggs in connection with their desire to procure all Bay Colony HOA documents concerning the subject Compass Isle property, specifically any and all documents that could potentially have an impact upon use of the property for short term or vacation rental purposes.

53.     At all times material, in his capacity as Manager for Defendant Balistreri, and based upon Plaintiffs' multiple requests to him to be provided with all Bay Colony HOA documents, specifically including any documents containing wording that could have an impact upon use of the subject property for short term and vacation rentals, Defendant Sicilia owed a duty to the Greggs to exercise reasonable care, which specifically included the duty to provide the Greggs with all such documents, and it was reasonably foreseeable to Defendant that a failure to do so could expose the Greggs to unreasonable risk of harm or damage.

54.     On numerous occasions prior to the closing on the subject property, the Greggs informed Defendant Sicilia that they needed to be provided with all HOA documents, and that they would not proceed with or authorize the closing and purchase of the subject property if there were any HOA documents that were worded in such a way as to impact the ability of paying or non-paying guests from accessing and/or occupying the property. In this regard, Christopher Gregg wrote to Defendant Sicilia and Defendant Dudley on March 21, 2015, "It is the wording of the HOA regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase…" (see Comp. Exh. B HERETO).

55.     Defendant Sicilia breached his duty of reasonable care to the Greggs by negligently failing to provide the Bay Colony Rules to the Greggs at any time prior to closing, or to ensure that said Rules were so provided to them.

56.     But for the negligence of Defendant Sicilia, the Greggs would not have authorized the closing and purchase of the property, and as a direct, foreseeable result of such negligence, the Greggs have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

57.     Defendant Sicilia's conduct, as more particularly alleged hereunder, constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct.  Accordingly, the

Greggs are entitled to recovery of punitive damages from Defendant Sicilia.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for the following relief against Defendant Sicilia:

(a)  Damages in the amount of $1,000,000.00, or according to proof;

(b)  Punitive Damages;

(c)  Costs and Expenses of Suit; and

(d)  Such other and further relief that the Court may deem proper and just.

<u>**Count IV**</u>
(**Plaintiffs Christopher and Diane Gregg Against Defendant Balistreri Realty for Vicarious Liability Based on Negligence of Defendant Sicilia**)

58.     Plaintiffs Christopher and Diane Gregg reallege paragraphs 1 through 34, and paragraphs 52 through 57, above, as though fully set forth herein.

59.     At all times material, Defendant Sicilia was employed as a Manager for Defendant Balistreri Realty, and was acting within the course and scope of his duties as Manager for Defendant Balistreri.

60.     Defendant Balistreri Realty is therefore vicariously liable to the Greggs for the negligence of its Manager, Rick Sicilia, and the damages caused thereby.

61.     Further, Balistreri Realty is vicariously liable to the Greggs for punitive damages, given that Defendant Sicilia was a managing agent of Defendant Balistreri at all material times, and his conduct constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for the following relief against Defendant Balistreri Realty:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c) Costs and Expenses of Suit; and

(d) Such other and further relief that the Court may deem proper and just.

**Count V**

**(Plaintiff Travelpath Canada Against Defendant Carol Dudley for Negligence Based on Breach of Statutory Duty Owed to Plaintiffs as Transaction Broker Pursuant to Fla. Stat. § 475.278)**

62.     Plaintiff Travelpath Canada realleges and incorporates paragraphs 1 through 34, above, as though fully set forth herein.

63.      Pursuant to Fla. Stat. § 475.278(2), Defendant Dudley owed a duty to Plaintiff Travelpath Canada to use "skill, care, and diligence in the transaction." Moreover, Defendant owed Travelpath Canada a duty to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances.

64.     Defendant Dudley knew that a primary purpose for Travelpath Canada's acquisition of the Compass Isle Property was to use it for short term and vacation rentals. Christopher Gregg, owner and President of Travelpath Canada, was emphatic in informing Defendant in an email on March 24, 2015, that confirmation that "**all** of the HOA documents" had been provided was needed.  This e-mail made it unequivocally clear to Defendant Dudley that Plaintiffs were proceeding in good faith that there were no HOA documents that could have an "impact on paying and non-paying guests from accessing and occupying the premises at 2 Compass Isle." (See Comp. Exh. B HERETO).  Further, it was stated in said e-mail that,

"After a review of the HOA documents provided by Carol [Dudley] on Mar. 21 we have been advised there is no clause prohibiting paying and non-paying guests from occupying the premises at 2 Compass Isle under the ownership of the Greggs **or an assigned company**. Diane [Gregg] has requested confirmation that **<u>all</u>** of the HOA documents have been sent to us." (*Id*.) (emphasis supplied).   Further, as noted hereinabove, Plaintiffs informed Defendant Dudley that, "It is the wording of the HOA regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase**.**" (*Id*.)   Defendant Dudley had a duty to provide to Travelpath Canada any and all HOA documents rules, requirements and/or restrictions that could conceivably impact the intended use of the property for short term and vacation rental purposes.   Defendant had a duty to make a reasonable investigation into the HOA documents and to specifically determine whether there were any such rules, and/or to carefully review the HOA documents to determine whether, in fact, the HOA Rules were included.   A reasonably skillful, careful and diligent realtor, engaged in the business of representing buyers in the acquisition of residential property in South Florida, particularly residential property within a planned community governed by a homeowners' association, would or should know, that HOA documents include Rules of the association and that such rules may, or are even likely to, contain provisions impacting the use or intended use of the property, specifically including rentals of the property.

65.     Despite such knowledge, and her knowledge that Travelpath Canada's owners (Christopher and Diane Gregg) and its President, Christopher Gregg, were deeply concerned about the existence of any HOA documents that could have an impact upon rentals of the property by the Greggs or an assignee company, and/or her knowledge that it was the wording of the HOA documents that would determine if the purchase would proceed, Defendant Dudley

failed to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances, and breached her duty to Plaintiff Travelpath Canada to exercise skill, care and diligence in the transaction: (a) by failing to provide to Travelpath Canada's owners, the Greggs and/or its President, Christopher Gregg, or to their agent, the full HOA documents, specifically including the Bay Colony Rules, prior to the closing, or at any time thereafter; and/or (b) by failing to make a reasonable investigation or inquiry to determine whether or not there existed any documents purporting to be HOA Rules, particularly those that might impact Plaintiffs' intended use of the property for short term and vacation rentals; and/or (c) by failing to ensure that the HOA documents she had provided to the Greggs or their agent, were comprised of all the HOA documents, specifically including the Bay Colony Rules; and/or (d) by failing to carefully review the HOA documents she provided to the Greggs or their agent to ensure that such documents included the HOA (i.e. Bay Colony) Rules.

66.     It was reasonably foreseeable to Defendant Dudley that if Travelpath Canada had been aware of the wording of Rule 11 of the Bay Colony Rules, it would not have proceeded with the closing and purchase of the subject property.  But for Defendant Dudley's negligence/breach of duty to Plaintiff Travelpath Canada, Plaintiff would not have proceeded with the purchase of the subject property and have made the substantial expenditures in connection with the property that it made, nor have incurred significant lost revenues and other financial losses, according to proof.

67.     As a direct, foreseeable and proximate result of Defendant Dudley's negligence, Plaintiff Travelpath Canada has sustained, and continues to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance,

closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

68.     Defendant Dudley's conduct, as more particularly alleged hereunder, constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Travelpath Canada, which was exposed to such conduct.  Accordingly, Plaintiff is entitled to recovery of punitive damages from Defendant.

**WHEREFORE** Plaintiff Travelpath Canada prays for the following relief against Defendant Dudley:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c) Costs and Expenses of Suit; and

(d) Such other and further relief that the Court may deem proper and just.

### <u>Count VI</u>
### (**Plaintiff Travelpath Canada Against Defendant Sicilia for Negligence**)

69.     Plaintiff Travelpath Canada realleges paragraphs 1 through 34, and paragraph 52, above, as though fully set forth herein.

70.     At all times material, Defendant Sicilia owed a duty to Plaintiff Travelpath Canada to exercise reasonable care, which included the duty to provide Travelpath's owners, the Greggs and/or its President, Christopher Gregg, with all HOA documents, specifically including the Bay Colony Rules, which could have an impact upon use of the subject property for short term and vacation rentals, and it was reasonably foreseeable to Sicilia that a failure to provide such documents could expose Travelpath Canada to unreasonable risk of harm or

damage.

71.     It was reasonably foreseeable to Defendant Sicilia that the Greggs would assign their rights, under the Contract, to purchase the subject property, and Defendant knew or should have known of the Greggs' assignment to Travelpath Canada.  To that end, Christopher Gregg sent an email to Rick Sicilia on March 24, 2015, in which he stated: "After a review of the HOA documents provided by Carol [Dudley] on Mar. 21 we have been advised there is no clause prohibiting paying and non-paying guests from occupying the premises at 2 Compass Isle under the ownership of the Greggs **or an assigned company**.  Diane [Gregg] has requested confirmation that **all** of the HOA documents have been sent to us.  As of now we have not been provided the confirmation from either the vendor's realtor or Carol [Dudley]…The Greggs are acting in good faith that we are in possession of all HOA documents, which having been reviewed show no impact on paying and non-paying guests from accessing and occupying the premises at 2 Compass Isle.  The above does not negate our ongoing request for confirmation that we are in receipt of all HOA documents…" (See Comp. Exh. B hereto).

72.     On numerous occasions prior to the closing, the Greggs informed Defendant Sicilia that they needed to be provided with all HOA documents, and that they would not proceed with the closing and purchase of the subject property if there were any HOA documents that were worded in such a way as to impact use of the property for short term and vacation rentals.  In this regard, Christopher Gregg, co-owner and President of Travelpath Canada, wrote to Defendants Sicilia and Dudley on March 21, 2015, "It is the wording of the HOA regarding our ability to have paying and non-paying guests as outlined to you and Rick{Sicilia} many times that will determine if we proceed with this purchase…" (*Id.*).

73.     Defendant Sicilia breached his duty of reasonable care to Travelpath Canada

by failing to provide the Bay Colony Rules to Travelpath Canada and/or the company's owners, the Greggs, and/or its President, Christopher Gregg, at any time prior to closing, or to ensure that said Rules were so provided.

74.     But for said negligence, the Greggs, as owners of Travelpath, and/or Christopher Gregg, as the company's President, would not have authorized the closing and purchase of the property, and Travelpath Canada would not have consummated the closing and purchased the property.

75.     As a direct, foreseeable result of Defendant Sicilia's negligence, Travelpath Canada has sustained, and continues to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

76.     Defendant Sicilia's conduct, as more particularly alleged hereunder, constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Travelpath Canada, which was exposed to such conduct. Accordingly, Travelpath Canada is entitled to recovery of punitive damages from Defendant Sicilia.

**WHEREFORE** Plaintiff Travelpath prays for the following relief against Defendant Sicilia:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c)  Costs and Expenses of Suit; and

(d)  Such other and further relief that the Court may deem proper and just.

## Count VII

**(Plaintiff Travelpath Canada Against Defendant Balistreri Realty for Vicarious Liability Based on Negligence of Defendant Sicilia)**

77.     Plaintiff Travelpath Canada realleges paragraphs 1 through 34, paragraph 52, and paragraphs 70 through 76, above, as though fully set forth herein.

78.     At all times material, Defendant Sicilia was employed as a Manager for Defendant Balistreri Realty, and was acting within the course and scope of his duties as Manager for Defendant Balistreri.

79.     Defendant Balistreri Realty is vicariously liable to Travelpath Canada for the negligence of its manager, Rick Sicilia, and the damages caused thereby.

80.     Further, Balistreri Realty is vicariously liable to Travelpath Canada for punitive damages, given that Defendant Sicilia was a managing agent of Defendant Balistreri at all material times, and his conduct constituted "gross negligence," as that term is defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Travelpath Canada, which was exposed to such conduct.

**WHEREFORE** Plaintiff Travelpath Canada prays for the following relief against Defendant Balistreri Realty:

(a)  Damages in the amount of $1,000,000.00, or according to proof;

(b)  Punitive Damages;

(c)  Costs and Expenses of Suit; and

31

(d) Such other and further relief that the Court may deem proper and just.

### Count VIII
**(Plaintiffs Christopher and Diane Gregg Against Defendant Carol Dudley
for Negligent Misrepresentation)**

81.     Plaintiffs Christopher and Diane Gregg reallege and incorporate paragraphs 1 through 34, and paragraphs 43 through 46, above, as though fully set forth herein.

82.     In an e-mail sent on March 24, 2015, Defendant Dudley made a false statement or misrepresentation of a material fact to the Greggs, specifically, the statement**, "**Everything Jil [Shapiro] sent me and I forwarded to you were the **FULL HOA** docs." (See Defendant Dudley's March 24, 2015 e-mail to the Greggs, Composite Exhibit B hereto) (Emphasis in original).

83.     At the time that false statement or misrepresentation was made, Defendant Dudley was without knowledge as to its truth or falsity, or it was made under circumstances in which Defendant ought to have known it was false, even if she did not, in fact, know of the falsity thereof.

84.     The false statement or misrepresentation was intended to induce the Greggs to act in reliance thereon, specifically to go forward with the purchase, or to authorize the purchase of, and closing on, the subject property, unfettered by any concerns as to rules, restrictions, and/or requirements impacting the ability of paying or non-paying guests to access and occupy the property and/or impacting or restricting short term or vacation rentals thereon.

85.     In justifiable reliance on Defendant Dudley's false statement or misrepresentation, the Greggs proceeded toward a closing and did not withdraw from the Contract and, approximately two months following Defendant's false statement or misrepresentation, the Greggs assigned their rights under the Contract to Plaintiff Travelpath

Canada, and, as officers of Travelpath Canada (Christopher Gregg being President thereof) and owners of all beneficial interest in the company, they authorized Plaintiff Travelpath Canada to accept the Assignment and to proceed to closing and purchase of the subject Compass Isle Property.  Although Defendant Dudley failed to provide them with the Bay Colony Rules, the Greggs justifiably believed they had received all HOA documents and that there were thus no impediments to the intended use of the subject property.

86.     As a direct, foreseeable and proximate result of Defendant Dudley's negligent misrepresentation, Plaintiffs Christopher and Diane Gregg have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

87.     Defendant Dudley's conduct, as more particularly alleged hereunder, constituted "gross negligence," as defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct.  Accordingly, Plaintiffs seeks recovery of punitive damages from Defendant Dudley.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for the following relief against Defendant Dudley:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c) Costs and Expenses of suit; and

(d) Such other and further relief that the Court may deem proper and just.

**Count IX**
(**Plaintiffs Christopher and Diane Gregg Against Defendant Jil Shapiro for Negligent Misrepresentation**)

88.     Plaintiffs Christopher and Diane Gregg reallege paragraphs 1 through 34, above, as though fully set forth herein.

89.     As a licensed real estate broker and/or salesperson involved in the subject transaction, under Florida law, Defendant Shapiro owed the Greggs a duty to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances.  Pursuant to Fla. Stat. § 475.278(2), the statutory duties of Defendant Shapiro to the Greggs in connection with the purchase and sale of the Compass Isle Property included the duty to use "skill, care, and diligence in the transaction."

90.      At all times material, Defendant Shapiro, an experienced realtor in South Florida, was, herself, a homeowner and resident in the subject Bay Colony subdivision, and her home was in close proximity to the subject Compass Isle Property.  Furthermore, at all times material, Defendant Shapiro's husband was on the Bay Colony Board of Directors.  Given these facts, Defendant Shapiro, even apart from her role in the subject transaction, was likely, if not certain, to be familiar with the existence of the document containing the Bay Colony Rules, including the requirements and restrictions upon Rentals encompassed within Rule 11.

91.     Defendant Shapiro made a false statement or misrepresentation of material fact to the agent representing the Greggs (Defendant Dudley), that she (Defendant Shapiro) had provided the "**FULL HOA** docs."  (March 24, 2015 email from Shapiro to Dudley, Comp. Exh. B hereto) (Emphasis in original).  The March 24, 2015 e-mail from Defendant Dudley to the Greggs, relaying to the Greggs Defendant Shapiro's said representation, was written almost

34

immediately after a "long chat" had ensued between Defendants Dudley and Shapiro, and it was implied in the e-mail that Dudley had conveyed to Shapiro the Greggs' deep concerns that they be provided with all HOA documents, their need for confirmation thereof and, in particular, their concerns over whether there were any documents that could impact rentals of the subject property. (*Id*.)

92.     It was reasonably foreseeable to Defendant Shapiro that Defendant Dudley, as a representative of the Greggs in the transaction, would relay to the Greggs what she had been told by Defendant Shapiro, to wit, that the documents being provided by Shapiro were the full HOA documents, and Dudley did, in fact, relay such information to the Greggs.  It was further reasonably foreseeable to Defendant Shapiro that the Greggs would rely on the representation that the documents being provided were the full HOA documents.

93.     At the time Defendant Shapiro made the false statement or misrepresentation of fact concerning the HOA documents, she was without knowledge as to its truth or falsity, or it was made under circumstances in which she ought to have known it was false, even if she did not, in fact, know of the falsity thereof.

94.     Defendant Shapiro's false statement or misrepresentation that the HOA documents she provided to Dudley were the full HOA documents was intended to induce the Greggs to act in reliance thereon, specifically to go forward with the purchase, or to authorize the purchase of, and closing on, the subject property, unfettered by any concerns as to rules, restrictions, and/or requirements impacting rentals of the property.

95.     In justifiable reliance on Defendant Shapiro's representation, the Greggs continued to proceed further in the transaction and toward a closing on the subject property, whereas the Greggs would have withdrawn from the Contract and not authorized the purchase

of the subject property had they known the true facts concerning the HOA documents. Further, approximately two months following Defendant Shapiro's misrepresentation, the Greggs assigned their rights under the Contract to Plaintiff Travelpath Canada, and, as a co-owner (along with Diane Gregg) and President of Travelpath Canada, Christopher Gregg, authorized Travelpath Canada to accept the assignment and to proceed to closing on the Compass Isle Property. Although Defendant Shapiro failed to provide them with the Bay Colony Rules, the Greggs justifiably believed they had received all HOA documents and that there were thus no rules containing wording that purported to impact rentals of the property. But for their reliance on Defendant Shapiro's representation, the Greggs would not have authorized Travelpath to purchase and close on the subject property.

96.     As a direct, foreseeable and proximate result of Defendant Shapiro's negligent misrepresentation, Plaintiffs Christopher and Diane Gregg have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

97.     Defendant Shapiro's conduct, as more particularly alleged hereunder, constituted "gross negligence," as defined by section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct. Accordingly, Defendant seeks recovery of punitive damages from said Defendant.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for relief against Defendant

Shapiro as follows:

    (a) Damages in the amount of $1,000,000.0, or according to proof;

    (b) Punitive Damages;

    (c) Costs and Expenses of Suit; and

    (d) Such other and further relief that the Court may deem proper and just.

<u>**Count X**</u>
**(Plaintiffs Christopher and Diane Gregg Against Defendant Jil Shapiro for Negligence)**

98.    Plaintiffs Christopher and Diane Gregg reallege paragraphs 1 through 34, above, as though fully set forth herein.

99.    At all times material, Defendant Shapiro owed the Greggs a duty to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances.  Pursuant to Fla. Stat. § 475.278(2), Defendant Shapiro had a statutory duty to the Greggs, to exercise skill, care, and diligence in connection with the subject purchase and sale transaction.

100.    At all times material, Defendant Shapiro knew that a primary purpose of the Greggs for purchase of the subject property would be for the Greggs and/or its Company's use of the property for short term and vacation rentals to friends, clients and/or business associates. Further, Defendant Shapiro knew that it was critical for the Greggs to be provided all HOA documents, and that they sought confirmation of same.  As noted hereinabove, even after Defendant Shapiro provided to Defendant Dudley what were allegedly, "the **FULL HOA** docs," Defendant Dudley wrote to Plaintiffs that she asked Defendant Shapiro to "double check and to send everything again so we do not miss anything at all." (See Comp. B hereto).

101.     Even if she had not possessed any specific knowledge as to the Greggs' intended plans for the subject property, Defendant Shapiro, as broker for the sellers, had a duty to provide to the Greggs all HOA documents, or at minimum, she undertook such a duty when she provided HOA documents to Defendant Dudley whom she knew was representing the Greggs in connection with the purchase of the property.  Defendant Shapiro had a duty to carefully and diligently review the HOA documents she was providing to the Greggs in order to determine whether, in fact, the HOA Rules were included.  A reasonably prudent and competent broker or sales associate engaged in transactions involving the sale and purchase residential property in South Florida, particularly residential property within a planned community governed by a homeowners' association, would know that HOA documents customarily include Rules of the Association.  This is especially the case where, as here, Defendant Shapiro, herself, was a homeowner and resident in the subject Bay Colony community, and her husband was on the Bay Colony HOA Board of Directors.

102.     Defendant Shapiro failed to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances, and breached her duty to the Greggs to exercise reasonable skill, care and/or diligence: (a) by failing to provide the Greggs or their agent with the full HOA documents, specifically including the Bay Colony Rules, prior to the closing, or at any time thereafter; and/or (b) by failing to make a reasonable investigation or inquiry to determine whether or not there existed any documents purporting to be HOA Rules, particularly those that might impact Plaintiffs' intended use of the property for short term and vacation rentals; and/or (c) by failing to ensure that the HOA documents she had provided to the Greggs or their agent, were comprised of all the HOA documents, specifically including the Bay Colony Rules; and/or (d) by failing to carefully review the HOA

documents to ensure that such documents included the HOA (i.e. Bay Colony) Rules.

103.    It was reasonably foreseeable to Defendant Shapiro that her failure to exercise skill, care and diligence, such as would be exercised by a reasonably prudent realtor in a similar community and under similar circumstances, would result in harm and damages to the Greggs. If the Greggs had been provided with the Bay Colony Rules, including Rule 11, and had seen the wording of said Rule prior to the closing on the subject property, they would not have proceeded with or authorized the closing and purchase of the property. Defendant Shapiro's breach of duty resulted in the Greggs making substantial expenditures and incurring significant lost revenues and other financial losses in connection with the subject property that they would not have otherwise made or incurred but for her negligence.

104.    As a direct, foreseeable and proximate result of Defendant Shapiro's negligence, Plaintiffs Christopher and Diane Gregg have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

105.    Defendant Shapiro's conduct, as more particularly alleged hereunder, constituted "gross negligence" within the meaning of section 768.72(2)(b), Florida Statutes, as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct. Accordingly, Plaintiff is entitled to recovery of punitive damages from said Defendant.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for relief against Defendant

Shapiro as follows:

    (a)  Damages in the amount of $1,000,000.00, or according to proof;

    (b)  Punitive Damages;

    (c)  Costs and Expenses of Suit; and

    (d)  Such other and further relief that the Court may deem proper and just.

**<u>Count XI</u>**
**(Plaintiff Travelpath Canada Against Defendant Shapiro for Negligence)**

106.    Plaintiff Travelpath Canada realleges and incorporates paragraphs 1 through 34, above, as though fully set forth herein.

107.    Section 7 of the subject Residential Contract for Sale and Purchase (the "Contract") (Exh. A hereto) is entitled, "**ASSIGNABILITY**." Section 7 expressly provides that Buyer "may assign" the Contract.

108.    At all material times, it was reasonably foreseeable to Defendant Shapiro that the the contracting Buyers pursuant to the Contract (the Greggs) would assign their right to purchase the property thereunder, and particularly so to a Company that they owned, such as Plaintiff Travelpath Canada.  In fact, prior to the consummation of the closing on the subject property, Defendant Shapiro knew that the Greggs were assigning their rights under the Contract to Plaintiff Travelpath Canada, and that after the closing, Travelpath Canada, which was owned by the Greggs, would be the legal owner of the property.  Defendant further knew that the Greggs executed a formal written assignment of their rights under the Contract to Travelpath Canada on June 15, 2015, the day of the closing on the subject property, and that the assignment was signed and executed by Travelpath Canada's President, Christopher Gregg. (See Exh. H hereto).

109.    Defendant Shapiro knew that, in the interval between execution of the Contract,

and up to and including the closing, Christopher and Diane Gregg (owners of Travelpath Canada) and Christopher Gregg (President of Travelpath Canada) were seeking all HOA documents, and especially any documents containing provisions that could have an impact upon the use of the subject property for short term and vacation rentals.

110.    Defendant Shapiro knew or should have known, prior to consummation of the closing and purchase of the property, that the buyer of the subject property and owner-to-be, Travelpath Canada, was owned by the Greggs, and/or that Christopher Gregg was Travelpath Canada's President.  Defendant further knew or should have known that Travelpath Canada intended to use the property for short term and vacation rentals, and that the Greggs would not have authorized Travelpath Canada to consummate the closing and purchase the property had the Greggs and/or its President, Christopher Gregg, been provided with the Bay Colony HOA Rules, particularly HOA Rule 11 regarding "Rentals," and seen the wording of Rule 11.

111.    As a licensed real estate broker and/or salesperson involved in the subject transaction, under Florida law, Defendant Shapiro owed Plaintiff Travelpath Canada a duty to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances.  Pursuant to Fla. Stat. § 475.278(2), the statutory duties of Defendant Shapiro in connection with the purchase and sale of the Compass Isle Property included the duty to use "skill, care, and diligence in the transaction."  Especially given her knowledge that prior to the June 15, 2015 closing, and even as early as March 2015, the Greggs were actively seeking any and all HOA documents containing any provision(s) that could have an impact on the ability to use the property for short term and vacation rentals and/or her knowledge that Plaintiffs were seeking absolute confirmation that there were no such documents, Defendant Shapiro's duty to exercise skill, care and diligence in the transaction, included, but

was not limited to, the duty to ensure that Plaintiff Travelpath was provided with any and all such documents before Plaintiff went through with the closing and purchased the property. Defendant knew or reasonably should have known of Travelpath Canada's and its principals' intended use of the property for short term and vacation rentals, and that Travelpath Canada would not have consummated the closing and purchased the property if had been aware of the wording of Bay Colony HOA Rule 11.

112.    At all times material, Defendant Shapiro was, herself, a homeowner and resident in the subject Bay Colony subdivision, and her home was in close proximity to the subject Compass Isle Property.  Furthermore, at all times material, Defendant Shapiro's husband was on the Bay Colony Board of Directors.  Given these facts, Defendant Shapiro, even independent of her integral role in the subject transaction involving the Greggs and Travelpath, was likely, if not certain, to be familiar with the existence of the document containing the Bay Colony Rules (Exh. C hereto), including the purported onerous requirements and restrictions upon Rentals encompassed within Rule 11 of said Rules.

113.    Defendant Shapiro failed to exercise the degree of care that would be exercised by similar professionals in the community under similar circumstances, and breached her duty to Travelpath Canada to exercise reasonable skill, care and/or diligence: (a) by failing to provide the owners of Travelpath Canada, the Greggs, and/or its President, Christopher Gregg, or their agent, with the full HOA documents, specifically including the Bay Colony Rules, prior to the closing; and/or (b) by failing to make a reasonable investigation or inquiry to determine whether or not there existed any documents purporting to be HOA Rules, particularly those that might impact Travelpath Canada's intended use of the property for short term and vacation rentals; and/or (c) by failing to ensure that the HOA documents she had provided to Travelpath's owners,

the Greggs and/or its President, Christopher Gregg, or their agent, were comprised of all the HOA documents, specifically including the Bay Colony Rules; and/or (d) by failing to carefully and diligently review the HOA documents to ensure that such documents included the HOA (i.e. Bay Colony) Rules.

114.    But for Defendant Shapiro's negligence, Travelpath Canada would not have gone through with the closing and purchased the subject property. It was reasonably foreseeable to Defendant Shapiro that her failure to exercise reasonable skill, care and diligence in connection with the subject transaction would result in harm and damages to Travelpath Canada.  If Travelpath Canada's owners, the Greggs, and/or the Company's President, Christopher Gregg, had seen the wording of Bay Colony Rule 11, they would not have authorized Travelpath Canada to consummate the closing and purchase the subject property. Defendant Shapiro's breach of duty resulted in Travelpath Canada making substantial expenditures and incurring significant lost revenues and other financial losses in connection with the subject property that it would not have otherwise made or incurred but for Defendant's negligence.

115.    As a direct, foreseeable and proximate result of Defendant Shapiro's negligence, Plaintiff Travelpath Canada has sustained, and continues to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

116.    Defendant Shapiro's conduct, as more particularly alleged hereunder, constituted "gross negligence" within the meaning of section 768.72(2)(b), Florida Statutes,

as such conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Greggs, who were exposed to such conduct. Accordingly, Plaintiff is entitled to recovery of punitive damages from said Defendant.

**WHEREFORE** Plaintiff Travelpath Canada prays for relief against Defendant Shapiro as follows:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Punitive Damages;

(c) Costs and Expenses of Suit; and

(d) Such other and further relief that the Court may deem proper and just.

## Count XII
### (Plaintiffs Christopher and Diane Gregg Against Defendant Vordermeier for Negligence)

117.　Plaintiffs reallege and incorporate paragraphs 1 through 17, and paragraphs 19 through 34, above, as though fully set forth herein.

118.　In March 2015, subsequent to the execution of the Contract for Purchase and Sale of the subject property (the Contract), Defendant Jil Shapiro requested and obtained a set of HOA documents from Defendant Vordermeier. At the time of providing HOA documents to Shapiro, Defendant Vordermeier knew or had reason to know that the requested documents were to be provided to the Greggs, or at least some prospective purchaser under contract to buy the subject property or property within the Bay Colony community.

119.　Section 2. of the "**Management Agreement**" between Defendant Vordermeier ("Manager") and Defendant BCPA ("Association"), which was in effect at all material times, is entitled, "**Services and Duties of Manager**." (copy of Management Agreement between Vordermeier and BCPA attached hereto as Exhibit J). Section 2. J. of the Management Agreement

provides that, "The Manager shall endeavor to secure full compliance by the members or other occupants with the By-Laws of the Association and such rules and regulations as may be established by the Association from time to time." Given that Defendant Vordermeier was charged with the responsibility of securing compliance with such rules and regulations, Defendant owed a duty to those who contracted to purchase property within the Bay Colony community, such as the Greggs, to provide them with any document purporting to contain the Bay Colony Rules prior to the closing and purchase of the property.

120.   It was reasonably foreseeable to Defendant Vordermeier that a failure to include the Bay Colony Rules in the documents it provided, including Rule 11, which purported to impose requirements and restrictions as to Rentals of the subject property, would expose the Greggs to an unreasonable risk of harm and/or damage, as they would be unable to make an informed decision as to whether to proceed with or authorize the purchase, completely unaware of such Rules.

121.   Defendant Vordermeier breached its duty to Plaintiffs Christopher and Diane Gregg by negligently failing to include a copy of the Bay Colony Rules with the HOA documents it provided to Defendant Shapiro or to otherwise provide a copy of such rules to the Greggs or their agent at any time prior to the closing and purchase of the subject property.

122.   Defendant Vordermeier belatedly provided a copy of the Bay Colony Rules to the Greggs only in August 2015, some two (2) months after the closing on the subject property. At that point in time, it was too late for the Greggs to decline to authorize the purchase by its company and assignee, Plaintiff Travelpath Canada, and the Greggs had already expended significant amounts of their personal funds and incurred significant costs in connection with the property.

123.   Furthermore, subsequent to the belated provision of the Bay Colony Rules to Plaintiffs, a representative of Defendant BCPA expressly admonished Plaintiffs that Rule 11 would

be strictly enforced. Rule 11 of the Bay Colony Rules, precludes, as a practical matter, the subject property being used for short term or vacation rentals.

124.    The Greggs would not have authorized the closing and purchase of the property had they been provided with the Bay Colony Rules and seen the wording of Rule 11.  Nor would they have expended significant funds or incurred substantial costs in connection the property but for the negligence of Defendant Vordermeier in negligently failing to provide the Bay Colony Rules.

125.    As a direct, foreseeable and proximate result of Defendant Vordermeier's negligence, Plaintiffs Christopher and Diane Gregg have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for relief against Defendant Vordermeier as follows:

(a)  Damages in the amount of $1,000,000.00, or according to proof;

(b)  Costs and Expenses of Suit; and

(c)  Such other and further relief that the Court may deem proper and just.

## <u>Count XIII</u>
### (Plaintiff Travelpath Canada Against Defendant Vordermeier for Negligence)

126.    Plaintiff Travelpath Canada realleges and incorporates paragraphs 1 through 17, paragraphs 19 through 34, and paragraph 118-119 above, as though fully set forth herein.

127.    It was reasonably foreseeable to Defendant Vordermeier that a failure to include

the Bay Colony Rules among the documents it provided to the Greggs, would expose the Greggs' company and assignee, Plaintiff Travelpath Canada, to an unreasonable risk of harm and/or damage, as Travelpath Canada would be unable to make an informed decision as to whether to proceed with the purchase of the subject property, completely unaware of such Rules.

128.    Defendant Vordermeier breached its duty to Plaintiff Travelpath Canada by negligently failing to include a copy of the Bay Colony Rules with the HOA documents it provided to Defendant Shapiro, and by otherwise failing to provide a copy of such rules to Travelpath Canada or its agent at any time prior to the consummation of the closing and purchase of the subject property.

129.    Defendant Vordermeier belatedly provided a copy of the Bay Colony Rules to the Greggs/Travelpath Canada only in August 2015, some two (2) months after the closing on the subject property. At that point in time, it was too late for Travelpath Canada to decline to proceed with the closing and purchase of the subject property, and Travelpath Canada had already expended significant funds and incurred significant costs in connection with the property.

130.    Furthermore, subsequent to the belated provision of the Bay Colony Rules to Plaintiffs, a representative of Defendant BCPA expressly admonished Plaintiffs that Rule 11 would be strictly enforced.

131.    Plaintiff Travelpath Canada would not have proceeded with the closing and purchase of the subject property had its owners and/or President been provided with the Bay Colony Rules and seen the wording of Rule 11.  Nor would Travelpath Canada have expended significant funds or incurred substantial costs in connection the property but for the negligence of

Defendant Vordermeier in negligently failing to provide the Bay Colony Rules.  Rule 11 of the Bay Colony Rules, precludes, as a practical matter, the subject property being used for short term or vacation rentals.

132.   As a direct, foreseeable and proximate result of Defendant Vordermeier's negligence, Plaintiff Travelpath Canada has sustained, and continues to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

**WHEREFORE** Plaintiff Travelpath Canada prays for relief against Defendant Vordermeier as follows:

(d)  Damages in the amount of $1,000,000.00, or according to proof;

(e)  Costs and Expenses of Suit; and

(f)  Such other and further relief that the Court may deem proper and just.

### Count XIV
### (Plaintiffs Christopher and Diane Gregg Against Defendant BCPA for Negligence)

133.   Plaintiffs Christopher and Diane Gregg reallege and incorporate paragraphs 1 through 34, above, as though fully set forth herein.

134.   Section 2. of the "**Management Agreement**" between Defendant Vordermeier ("Manager") and Defendant BCPA ("Association"), which was in effect at all material times, is entitled, "**Services and Duties of Manager**." (copy of Management Agreement attached hereto as Exhibit J).  Section 2. J. of the Management Agreement provides that, "The Manager shall endeavor to secure full compliance by the members or other occupants with the By-Laws of the

Association and such rules and regulations as may be established by the Association from time to time."

135.   Defendant BCPA expected all property owners to comply with rules and regulations of the Association and took proactive measures to procure compliance therewith. BCPA owed a duty to those who contracted to purchase property within the Bay Colony community, such as the Greggs, to provide them with any document purporting to contain rules and/or regulations prior to the closing and purchase of the subject property, so that they would be aware of such document prior to consummating or authorizing a purchase of the subject property.

136.   Defendant BCPA not only knew that the Greggs had contracted to purchase the subject Compass Isle Property, but charged them fees as a prerequisite to proceeding with such purchase.

137.   It was reasonably foreseeable to Defendant BCPA that a failure to provide the Greggs with the Bay Colony Rules, including Rule 11, which purported to impose requirements and restrictions as to Rentals of the subject property, would expose the Greggs to an unreasonable risk of harm and/or damage, as they would be unable to make an informed decision as to whether to proceed with or authorize the purchase, being completely unaware of such Rules.  It was further reasonably foreseeable to BCPA that after proceeding with the purchase, or authorizing the purchase on behalf of an assignee company (i.e. Travelpath Canada), which the Greggs owned, the Greggs would make expenditures and incur costs in connection with the property, reasonably believing that there was no HOA rule appearing to impede use of the property for short term and vacation rentals, as Defendant BCPA failed to provide Plaintiffs with the Bay Colony Rules prior to the closing.

138.   Defendant BCPA breached its duty to Plaintiffs Christopher and Diane Gregg by

negligently failing to provide the Bay Colony Rules to the Greggs or their agent prior to closing.

139.     The Greggs belatedly received a copy of the Bay Colony Rules from BCPA's property manager in August 2015, some two (2) months after the closing on the subject property. At that point in time, it was too late for the Greggs to decline to authorize the purchase by its company and assignee, Plaintiff Travelpath Canada, and the Greggs had already expended significant amounts of their personal funds and incurred significant costs in connection with the property.

140.     Furthermore, subsequent to the belated receipt of the Bay Colony Rules to Plaintiffs, a representative of Defendant BCPA expressly admonished Plaintiffs that Rule 11 would be strictly enforced. Rule 11 of the Bay Colony Rules, precludes, as a practical matter, the subject property being used for short term or vacation rentals.

141.     The Greggs would not have authorized the closing and purchase of the property had they been provided with the Bay Colony Rules and seen the wording of Rule 11.  Nor would they have expended significant funds or incurred substantial costs in connection the property but for the negligence of Defendant BCPA in negligently failing to provide the Bay Colony Rules. Rule 11 of the Bay Colony Rules, precludes, as a practical matter, the subject property being used for short term or vacation rentals.

142.     As a direct, foreseeable and proximate result of Defendant BCPA's negligence, the Greggs have sustained, and continue to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

**WHEREFORE** Plaintiffs Christopher and Diane Gregg pray for relief against Defendant BCPA as follows:

(a) Damages in the amount of $1,000,000.00, or according to proof;

(b) Costs and Expenses of Suit; and

(c) Such other and further relief that the Court may deem proper and just.

<u>**Count XV**</u>
**(Plaintiff Travelpath Canada Against Defendant BCPA for Negligence)**

143.   Plaintiff Travelpath realleges and incorporates paragraphs 1 through 34, above, as though fully set forth herein.

144.   Section 2. of the "**Management Agreement**" between Defendant Vordermeier ("Manager") and Defendant BCPA ("Association"), which was in effect at all material times, is entitled, "**Services and Duties of Manager**." (copy of Management Agreement attached hereto as Exhibit J).  Section 2. J. of the Management Agreement provides that, "The Manager shall endeavor to secure full compliance by the members or other occupants with the By-Laws of the Association and such rules and regulations as may be established by the Association from time to time."

145.   Defendant BCPA expected all property owners to comply with rules and regulations of the Association and took proactive measures to procure compliance therewith. BCPA owed a duty to those who contracted to purchase property within the Bay Colony community, such as the Greggs, to provide them with any document purporting to contain rules and/or regulations prior to the closing and purchase of the subject property, so that they would be aware of such document prior to consummating or authorizing a purchase of the subject property.

146.   Defendant BCPA not only knew that the Greggs had assigned their rights to

purchase the subject property to their, Company, Travelpath Canada, but charged Travelpath

Canada fees as a prerequisite to Travelpath being able to proceed with such purchase.

147.    It was reasonably foreseeable to Defendant BCPA that a failure to provide

Plaintiff Travelpath Canada with the Bay Colony Rules, including Rule 11, which purported to

impose requirements and restrictions as to Rentals of the subject property, would expose Plaintiff

to an unreasonable risk of harm and/or damage, as it would be unable to make an informed

decision as to whether to proceed with or authorize the purchase, being completely unaware of

such Rules.  It was further reasonably foreseeable to BCPA that after proceeding with the

purchase, Travelpath Canada would make expenditures and incur costs in connection with the

property, reasonably believing that there was no HOA rule appearing to impede use of the

property for short term and vacation rentals, as Defendant BCPA failed to provide Plaintiff with

the Bay Colony HOA Rules prior to the closing.

148.    Defendant BCPA breached its duty to Plaintiff Travelpath Canada by negligently

failing to provide the Bay Colony Rules Plaintiff or its owners or President prior to closing.

149.    Travelpath Canada belatedly received a copy of the Bay Colony Rules from

BCPA's property manager in August 2015, some two (2) months after the closing on the subject

property. At that point in time, it was too late for Travelpath Canada to decline to purchase the

subject property, and it had already expended significant funds and incurred significant costs in

connection with the property.

150.    Furthermore, subsequent to the belated receipt of the Bay Colony Rules to

Plaintiffs, a representative of Defendant BCPA expressly admonished Plaintiffs that Rule 11 would

be strictly enforced.  Rule 11 of the Bay Colony Rules, precludes, as a practical matter, the subject

property being used for short term or vacation rentals.

151.   Plaintiff Travelpath Canada would not have proceeded with the closing and purchase of the property had it been provided with the Bay Colony Rules and seen the wording of Rule 11.  Nor would Travelpath Canada have expended significant funds or incurred substantial costs in connection the property but for the negligence of Defendant BCPA in negligently failing to provide the Bay Colony Rules.

152.   As a direct, foreseeable and proximate result of Defendant BCPA's negligence, Travelpath Canada has sustained, and continues to sustain, damages, including, but not limited to, expenses for renovations, repairs, improvements and maintenance on the subject property, furnishings for the home thereon, real estate taxes, fees and insurance, closing costs, costs associated with financing, and lost opportunity costs on personal funds expended, with such damages collectively totaling over $1,000,000.00, or according to proof.

**WHEREFORE** Plaintiff Travelpath Canada prays for relief against Defendant BCPA as follows:

(d)  Damages in the amount of $1,000,000.00, or according to proof;

(e)  Costs and Expenses of Suit; and

(f)  Such other and further relief that the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all claims and issues so triable.

Respectfully submitted,

*/s/ Michael L. Feinstein*
Michael L. Feinstein, Esquire

MICHAEL L. FEINSTEIN, P.A.

Florida Bar No. 650382
200 SE 18th Court
Fort Lauderdale, FL 33316
Telephone:  (954) 767-9662
Facsimile:  (954) 764-4502
Michael@feinsteinlaw.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Michael L. Feinstein*
Michael L. Feinstein, P.A.
Florida Bar No. 650382
Attorney for Plaintiffs
MICHAEL L. FEINSTEIN, P.A.
200 SE 18th Court
Fort Lauderdale, FL 33316
Telephone: (954) 767-9662
Facsimile: (954) 764-4502
Michael@feinsteinlaw.net