**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CHRISTOPHER GREGG,
DIANE GREGG, and TRAVELPATH CANADA LIMITED, a Canadian Corporation,

Plaintiffs,

v. Case No.: 18-CV-60192

IRL A. SOLOMON, HELENE SOLOMON, CAROL DUDLEY, JIL SHAPIRO, EMM ENTERPRISES, INC., a Florida Corporation, d/b/a REALTY WORLD SOUTH FLORIDA, BALISTRERI REALTY, INC., a Florida Corporation, BAY COLONY PROTECTIVE ASSOCIATION, INC., a Florida Corporation, and VORDERMEIER MANAGEMENT COMPANY, d/b/a VMC Realty, a Florida Corporation,

Defendants.
_______________________________________/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS COUNTS II, III, IV, V, VI, VII AND VIII OF PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANTS, CAROL DUDLEY, RICK SICILIA AND BALISTRERI REALTY, INC.**

Plaintiffs, CHRISTOPHER GREGG, DIANE GREGG ("the Greggs"), and TRAVELPATH CANADA LIMITED ("Travelpath Canada" or "Travelpath"), by and through their undersigned counsel, hereby file this Memorandum of Law in Opposition to Motion to Dismiss Counts II, III, IV, V, VI, VII and VIII of Plaintiffs' Second Amended Complaint by Defendants CAROL DUDLEY ("Dudley"), RICK SICILIA ("Sicilia") and BALISTRERI REALTY, INC. ("Balistreri Realty") (collectively "Defendants"), and state as follows:

## I. INTRODUCTION

In their Motion to Dismiss (Doc. 78), Defendants seek dismissal of Counts II, III, IV, V, VI, VII and VIII of the Second Amended Complaint (Doc. 63), pursuant to Fed. R. Civ. P. 12(b)(6). Defendant's motion is predicated upon two alternative contentions: (1) that Plaintiffs' claims "are barred by the two-year statute of limitations for professional malpractice"; or (2) alternatively, that "Plaintiffs expressly agreed in the purchase contract not to rely upon Defendants for verification of facts that materially affect the property value." (Doc. 78, pp. 1-2). Plaintiffs will show that neither of these contentions has merit in relation to any of the claims Plaintiffs have asserted against Defendants and that, therefore, Defendants' motion should be denied in its entirety.[1]

The allegations of the Second Amended Complaint must be accepted as true for purposes of this Rule 12(b)(6) motion to dismiss, and all reasonable inferences from the facts alleged are to

[1] Defendants repeated assertion that Plaintiffs have alleged a "cause of action for breach of fiduciary duty" (Doc. 78, p. 2; p. 4) is puzzling, as Plaintiffs have asserted no such claim in their pleading. Nor have Plaintiffs alleged, as Defendants are claiming, that Defendant Sicilia "***improperly performed real estate brokerage services on [Plaintiffs'] behalf***." (*Id.*) Plaintiffs' claims against Sicilia are that he was negligent in his managerial capacity at the offices Defendant Balistreri Realty, and that Balistreri Realty is vicariously liable for such negligence. (Doc. 63, Counts III, IV, VI and VII). Unlike the allegations against Defendant Dudley (*Id*. Counts II, V and VIII), there are no allegations that Sicilia was acting as a transaction broker on behalf of Plaintiffs or that he violated any duties set forth in Chapter 475, Florida Statutes. As such, the claims against Sicilia are for breach of a common law duty of due care, not, as Defendants have characterized them, for "***professional negligence***." (Doc. 78, p. 2). Moreover, contrary to Defendants' further misleading averments, Plaintiffs have not alleged that Sicilia breached his "***professional duty***" to Plaintiffs" (*Id*. at pp. 4-5), or that he committed "***professional malpractice*** in [his] duties as the agent/broker of Plaintiffs." (*Id*. at p. 5). Other misrepresentations of Defendants concerning Plaintiffs' allegations concerning Sicilia include, but are not limited to, that, "The Second Amended Complaint further alleges that RICK SICILIA…owed a ***professional duty*** of due care in regards to facilitating the subject real estate transaction on behalf of BALISTRERI REALTY, INC." (*Id*. at p. 7), and "that the claims against…RICK SICILIA…are all based on the failure of a ***professional acting within his/her professional capacity pursuant to Chapter 475, Fla. Stat***." (*Id*. at p. 9) (emphasis added). It is respectfully submitted that the Court should strike and/or disregard the foregoing misrepresentations.

be drawn in Plaintiffs' favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The allegations must be construed in the light most favorable to plaintiffs and the trial court must not speculate what the true facts may be or what will be proved ultimately in trial of the cause." *Poulos v. Vordermeier*, 327 So.2d 245, 246 (Fla. Dist. Ct. App. 1976). A complaint survives a motion to dismiss when it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation omitted).

## II. ARGUMENT

### A. Defendants' Contention that Plaintiffs' Claims Against Them Are Barred by the Two-Year Statute of Limitations for Professional Malpractice Is Without Merit

In their motion, Defendants state as follows:

> §95.11(4)(a), Fla.Stat. (1999) provides that the statute of limitations for professional malpractice, other than medical malpractice, whether founded on contract or tort, is two years from the date the cause of action is discovered or should have been discovered with the exercise of due diligence; ***provided, however, that the limitation of actions for professional malpractice is limited to persons in privity with the professional***. Additionally, §475.01(1)(j) and §475.01(1)(a), Fla.Stat. (1994), respectively, provide that a real estate sales associate and a real estate broker each renders a professional service and is a professional within the meaning of §95.11(4)(a). The Second Amended Complaint unequivocally alleges that CAROL DUDLEY was at all times material, a licensed real estate broker and/or agent representing Plaintiffs in connection with the purchase of the subject property. ***The Second Amended Complaint further alleges that RICK SICILIA*** was an employee of BALISTRERI REALTY, INC., and in his capacity as a manager at BALISTRERI REALTY, INC., ***owed a professional duty*** of due care in regards to facilitating the subject real estate transaction on behalf of BALISTRERI REALTY, INC. and, as his employer, BALISTRERI REALTY, INC. is vicariously liable for his actions.

(Doc. 78, p. 7) (emphasis added).

1. *Section 95.11(4)(a), Florida Statutes applies to malpractice claims against a professional in "privity" with plaintiff*

At the threshold, it should be noted that Defendants have yet again misrepresented Plaintiffs' allegations concerning Defendant Sicilia to the Court. Nowhere in the Second Amended

Complaint have Plaintiffs alleged that Sicilia "owed a professional duty."

Plaintiffs do not dispute that, under the pertinent provisions of Chapter 475, Florida Statutes, Defendants *Dudley* was, at all material times, a "professional within the meaning of §95.11(4)(a)." Nor do Plaintiffs disagree that the statutory period prescribed under §95.11(4)(a) is two (2) years. However, the key words here are, as Defendants, themselves, have acknowledged: "…***provided, however, that the limitation of actions for professional malpractice is limited to persons in privity with the professional***." (emphasis added). Accordingly, unless Plaintiffs were in "privity" with Defendants at the time of the alleged negligence, the two-year statute of §95.11(4)(a) does not apply, and it is, rather, the four-year statute of § 95.11(3)(a), governing actions for negligence, that applies. *Llano Financing Group v. Petit*, 230 So.3d 141, 143 (Fla. Dist. Ct. App. 2017).

*2. The meaning of the term, "privity" for purposes of section 95.11(4)(A)*

This, therefore, leads to the question of the meaning of the term of art, "privity," for purposes of §95.11(4)(a). This question has been answered by the Florida Supreme Court. In *Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condominium Ass'n, Inc.*, 581 So.2d 1301 (Fla.1991), the Court held that the term, "privity," "**must be construed for purposes of section 95.11(4)(a) to mean <u>direct contractual privity</u>**." *Id*. at 1302 (emphasis added). More specifically, the Court explained:

> The duty of this Court in construing statutory language is to determine what the legislature intended when it passed the statute. We are confined in the first instance to the plain meaning of the words the legislature chose to employ. Furthermore, the legislature is presumed to know the meaning of the words chosen and to have expressed its intent by use of those words. When words or terms are not specifically defined in the statute, such words must be given their plain or ordinary meaning. Finally, statutes should be construed with reference to the common law, and we must presume that the legislature would specify any innovation upon the common law.

> In addition to these principles governing statutory construction generally, we must also consider principles specifically governing statutes of limitations. Statutes of limitations bar the enforcement of an otherwise valid cause of action…***Where a statute of limitations shortens the existing period of time the statute is generally construed strictly***, and where there is reasonable doubt as to legislative intent, the preference is to allow the longer period of time. See *Haney v. Holmes*, 364 So.2d 81 (Fla.2d DCA 1978), appeal dismissed, 367 So.2d 1124 (Fla.1979).
>
> ***Applying these rules of construction leads us to conclude that the term "privity" as used in section 95.11(4)(b) means direct contractual privity.*** The term "privity" is a word of art that derives from the common law of contracts. It is commonly used to describe ***the relationship of persons who are parties to a contract.*** See 4 Corbin on Contracts § 772, at 2 (1951). At early common law, only those in ***direct privity*** to a contract could sue on a contract…To the extent our recent cases may have applied a different gloss to the concept of privity for these limited circumstances, the legislature would have been unaware of it when enacting the law in 1974. ***Thus, we conclude that the legislature intended privity in section 95.11(4)(a) to apply only to malpractice suits where direct privity is found to exist.***

*Id*. at 1302-1304 (citations omitted) (emphasis added).

3. *Defendant has failed to show direct contractual privity between Plaintiffs and Defendant Dudley*

There is not a single allegation in Plaintiffs' Second Amended Complaint (Doc. 63) indicating that there was a direct contractual privity between Plaintiffs and any of the Defendants. It bears reiterating that the Florida Supreme Court has made it clear that "statutes should be construed with reference to the common law," and that, "At early common law, ***only those in direct privity to a contract could sue on a contract***…" *Baskerville*-Donovan, 581 So.2d at 1303 (emphasis added). There is no allegation on the face of the Second Amended Complaint evincing a "contract" under which any of the Plaintiffs "could sue" any of the moving parties. Logic therefore dictates that without the existence of such a contract, there was no "direct privity" between Plaintiffs and Defendants. The Defendants have failed to address or even acknowledge *Baskerville-Donovan,* and instead have made a convoluted and unintelligible argument concerning

the privity issue.

Defendants' argument that there was privity between Defendants and Plaintiffs boils down to the following: (1) Defendants state that, "A real estate broker is statutorily defined as a person who, for compensation, directly or indirectly, negotiates ***a sale*** of real property for another." (Doc. 78, p. 7) (emphasis supplied); (2) Defendants state that, "Florida statutes clearly states [*sic*] that '[a] broker renders a professional service and is a professional within the meaning of s.95.11(4)(a).'" (Doc. 78, p. 7, citing Sec. 475.01(1)(a), Fla. Stat.); (3) Defendants note that, "Similarly, Florida statutes define a real estate sales associate as a person who performs any act specified in the definition of broker, but who performs such act under the direction, control, or management of another person," and that, "A sales associate renders a professional service and is a professional within the meaning of s. 95.11(4)(a)." (Doc. 78, p. 7, citing Sec. 475.01(1)(j), Fla. Stat.) (internal quotations omitted). From this point of departure, the Court is presumably supposed to conclude that, based on the foregoing statutory definitions, Plaintiffs were in privity (i.e. direct contractual privity) with Defendants for purposes of section 95.11(a)(4).

The Defendants' position is fatally flawed. The fact that under section 475.01 of the Florida Statutes, real estate brokers and sales associates are deemed to be professionals who render a professional service within the meaning of s.95.11(4)(a), does not equate to any of the Defendants being in direct contractual privity with Plaintiffs. If merely being a professional who renders a professional service to a party is all that is required for the two-year statute of limitations of section 95.11(a)(4) to apply to a professional malpractice claim against said professional, then the language in section 95.11(4)(a) which states, "…***provided, however, that the limitation of actions for professional malpractice is limited to persons in privity with the professional***," would be meaningless – mere surplusage. Even it is assumed, *arguendo*, that all of the movants were

professionals rendering a professional service to Plaintiffs, Defendants' position that, based on that fact without more, there was privity between Defendants and Plaintiffs for purposes of section 95.11(4)(a), fails.

The statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1292 (11th Cir.2005). A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted if it is apparent from the face of the complaint that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir.2004). A motion to dismiss on statute of limitations grounds should not be granted where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendants' favor. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir.2003). There is nothing on the face of the Second Amended Complaint showing that there was a direct contractual relationship between Defendants and Plaintiffs pursuant to which Defendants could both sue, and be sued by, Plaintiffs.

Even to the extent that Defendants may have derived some benefit by virtue of the Contract between Plaintiffs and the sellers (Solomons) (Doc. 63, Exh. A), Defendants would, at most, be third-party beneficiaries. There was no duty imposed upon Defendants under the Contract for the breach of which they could be sued. See *Mendez v. Hampton Court Nursing Ctr.*, LLC, 203 So.3d 146, 149 (Fla. 2016) ("Critically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around.") Defendant Dudley falls within the "third-party beneficiary doctrine" because, while she may have had, for example, the right under the Contract to be indemnified against liability arising out of the performance, "at [Plaintiffs] request, of any task beyond the scope of services regulated by Chapter 475 F.S" (Doc. 63, Exh A, paragraph 14 iii), it did not work "the other way around." *Mendez,* 203

So.3d at 149. In other words, there is nothing in Paragraph 14, or elsewhere in the Contract, that imposed any contractual duty upon Dudley (or the other Defendants) which Plaintiffs could enforce against her/them. "The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Mendez*, 203 So.3d at 149. While Defendant Dudley may have been intended to be benefited by paragraph 14 of the Contract, she was not in direct contractual privity with Plaintiffs. See *Baskerville-Donovan,* 581 So.2d 1301, 1302-04 (third-party beneficiary not in direct contractual privity with parties to underlying contact for purposes of section 95.11(4)(a)).

*4. The authority upon which Defendants rely is not controlling here*

Rather than addressing Florida Supreme Court and Florida Appellate precedent (i.e., *Baskerville-Donovan* and *Llano*), Defendants rely on two Federal District Court decisions in support of their position, both of which are inapposite, and neither of which is controlling here.

In *Carrington Capital Mgmt., LLC v. Carr*, 2015 WL 6865750 (S.D.Fla.2015), the defendant was a property appraiser who authored an appraisal dated March 25, 2005. Six years later, on September 29, 2011, the real property that was the subject of the appraisal was sold for a loss in a short sale. Thereafter, the plaintiff, Carrington, was "assigned all rights regarding the actions of the appraiser" by Carrington's predecessor, Gulf Stream Bank, for whom the appraisal was originally performed. On June 6, 2014, Carrington discovered potential errors in the appraisal, and commenced an action against the appraiser on May 28, 2015, asserting claims against the defendant for breach of contract, negligence, gross negligence, and fraud. The defendant argued that each of the claims were time-barred by section 95.11, Florida Statutes. *Id*. at * 1-2.

In accepting the defendant's argument that the statute barred Carrington's claims, which were deemed claims for professional malpractice, the Court found that Carrington "has pled

privity," by virtue of the following allegations:

> By agreement, Plaintiff was assigned all rights regarding the actions of the appraiser, including the right of the Lender or its assigns to bring this action, on June 10, 2011. As such, Plaintiff is responsible for enforcing all actions against the appraiser. Plaintiff is the owner and holder of the underlying obligation for which the above-described appraisal was issued, and is the successor in interest of both the equitable and legal interest in the underlying obligation and the appraisal upon which this action is based. (*Id*. at *2)

Although the Court did not specifically state that there was a direct contract between the defendant appraiser and plaintiff Carrington's predecessor assignor, Gulf Stream Bank, and therefore "direct contractual privity" between those entities, it is implicit that there was. First, one of the claims Carrington pled was for breach of contract. Second, and more importantly, there would have had to have been *direct contractual privity* between the appraiser and Gulf Stream Bank in order to conclude that there was privity between the appraiser and Gulf Stream's assignee, Carrington given that privity "***must be construed for purposes of section 95.11(4)(a) to mean direct contractual privity***." *Baskerville-Donovan,* 581 So.2d at 1301(emphasis supplied). If there was no direct contractual privity between the appraiser and Gulf Stream Bank, then, as a matter of law, there certainly could not be direct contractual privity between the appraiser and Carrington, the latter being the assignee of Gulf Stream's rights against the appraiser.

Accordingly, the *Carr* decision is inapplicable here. To the extent *Carr* could be read as implicitly finding that there was direct contractual privity between the appraiser and Gulf Stream Bank, which means that there must, of necessity, have been a *direct contract* between them, there is nothing on the face of the Second Amended Complaint herein indicating that there was a direct contract between any of the Defendants and the Plaintiffs for the rendering of professional services.

In *Carrington Capital Mgt., LLC v. Wallace*, 2016 WL 6778883 (M.D.Fla.2016), Homequest Funding, LLC ("Homequest") secured the services of a professional appraiser (the

defendant, Wallace) to appraise a residential property. Wallace submitted her Appraisal Report to Homequest, having appraised the value of the subject property at $660,000 as of October 12, 2005. Homequest, apparently acting as an agent for Citi Mortgage, procured the Appraisal Report from Wallace to assist Citi Mortgage in financing a purchase of the property. On October 26, 2005, Citi Mortgage entered into a Mortgage and Promissory Note with a borrower purchasing the subject property in the amount of $520,000. Citi Mortgage relied on the Appraisal Report when it approved the loan. On November 28, 2011, the property was sold through a short sale for the sum of $307,000. At or prior to the time of the short sale, Citi Mortgage assigned all of its rights to Carrington Capital Management, Inc. ("Carrington"). Carrington brought an action against the appraiser on June 15, 2015 based on, *inter alia*, breach of contract and negligence. Carrington asserted that the claim accrued on November 28, 2011, the date the subject property was sold for a loss through a short sale, and the defendant agreed with that date. On motion for summary judgment, the Court applied the two-year statute of limitations of section 95.11(4)(a) to Carrington's claims, finding that Carrington's action was untimely. *Wallace*, 2016 WL 6778883, at *1-5.

The Court explained the basis of its ruling as follows:

> Since privity of contract accompanies a valid assignment [citation omitted], there is no dispute that Carrington is in privity with Wallace for purposes of imposing the two-year statute of limitations on Carrington's claims. Indeed, in its opposition memorandum, ***Plaintiff does not dispute the issue of privity***. ***Based on the allegations in the Complaint*** and affidavit of Adel Issa [Carrington's Vice President], ***Plaintiff is in privity with Defendant***.

(*Id.* at *4) (emphasis supplied).

It is important to note that one of the "allegations in the Complaint" was that "[Wallace] and [Carrington's] Predecessor, from whom [Carrington] acquired all right, title and interest in such claims and causes of action, ***entered into an appraisal contract, which was founded upon a***

***written instrument***." *Id*. (emphasis supplied). It is unclear from the decision precisely who Carrington's "Predecessor" was, although logic would seem to dictate that it was Citi Mortgage or Homequest or both, since it was they who had engaged and relied upon Wallace for the appraisal of the subject property. What is clear, however, is that the allegations of the Complaint, upon which the Court's finding of privity were substantially based, indicated that Carrington's predecessor/assignor had a contract with Wallace. *Id*. Putting aside, for the moment, the question of whether the finding in *Wallace*, that Carrington (as an *assignee*) was in privity with the appraiser for purposes of section 95.11(4)(a) would be tenable in light of *Llano Financing Group v. Petit*, 230 So.3d 141 (Fla. Dist. Ct. App. 2017), there is no question, per Carrington's own allegations, that Carrington's predecessor was in direct privity of contract with the appraiser by virtue of an express written contract. However, unlike the situation in *Wallace*, there is no allegation in the Second Amended Complaint (Doc. 63) that any of the Plaintiffs entered into a contract with any of the Defendants to procure their professional services. Thus *Wallace* does not support Defendants' argument that they were in privity with the Greggs (Travelpath Canada's predecessors), and the decision has no application to the Greggs' claims against Defendants (i.e., Counts II, III, IV and VIII).[2]

5. *Plaintiff Travelpath Canada, as assignee of the Greggs cannot be deemed in direct contractual privity with any of the Defendants*

As discussed, the Greggs were not in direct contractual privity with any of the Defendants. *A fortiori*, Plaintiff Travelpath Canada, cannot be deemed in direct contractual privity with Defendants based on being an assignee of the Greggs. (Doc. 63, ¶32; Exh. H). Nevertheless, even

---

[2] Note that, while the plaintiff in *Wallace* "[did] not dispute the issue of privity" in its opposition memorandum (2016 WL 6778883, at *4), the Plaintiffs most distinctly do dispute it.

assuming, for the sake of argument, that the Greggs were in direct contractual privity with Defendants, it would not follow that Travelpath Canada was in direct contractual privity with Defendants under Florida law. See *Llano*, 230 So.3d at 143 (holding that an assignee of one in privity with a professional is not in direct contractual privity with the professional, and thus, the 4-year statute of limitations of section 95.11(3)(a), Florida Statutes applied to the claims against the professional, as opposed to the 2-year statute of section 95.11(4)(a).)

The Courts in *Carr* and *Wallace* (both of which were decided prior to *Llano*), held that an assignee of one in privity of contract with a professional was in privity with the professional for purposes of section 95.11(4)(a), "[s]ince privity of contract accompanies a valid assignment." See *Wallace*, 2016 WL 6778883, at *4.  *Carr* and *Wallace* are not controlling here, and the Court must apply Florida state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  "Florida courts consider the statute of limitations to be substantive rather than procedural." *Perez v. Fedex Ground Package Sys., Inc.*, 587 F. App'x 603, 606 (11th Cir. 2014) (citations omitted). *Llano*, which interpreted and applied *Baskerville-Donovan*, is binding precedent. Under *Llano*, the 4-year statute of limitations applies to the professional negligence claim(s) of Travelpath Canada. (Doc. 63, Count V). More specifically, as the Court explained in *Llano*:

> The relevant statute of limitations is four years. See § 95.11(3)(a), Fla. Stat. (2004) (providing four-year limitation for "[a]n action founded on negligence"). The separate two-year limitations period for most professional malpractice actions is inapplicable because it is "limited to persons in privity with the professional." *Id*. § 95.11(4)(a). We reject Llano's argument that the investment trust and appraiser were in privity as successors to SunTrust Mortgage, see *Baskerville–Donovan Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n*, 581 So.2d 1301, 1303 (Fla.1991) (holding that " 'privity' as used in section 95.11(4)(b) means "direct contractual privity"), and we conclude that the four-year period applied to each of Llano's claims.

*Llano*, 230 So.3d at 143.[3]

The Court is duty-bound to follow *Llano*. "Looking to the Eleventh Circuit for guidance, the court appears to be bound to follow state court rulings on issues of state law, particularly where a state court specifically contradicts an earlier interpretation of state law by a federal court." *Medalie v. FSC Sec. Corp.*, 87 F.Supp. 2d 1295, 1302 (S.D.Fla.2000) (citations omitted).

**B. Defendants' Argument Regarding Resolution of a Conflict Between Statutes of Limitation Is Immaterial and Does Not Support Dismissal of Plaintiffs' Claims**

Defendant contends as follows: "[E]ven if the Court determines that the two-year professional malpractice statute of limitations and the four-year statute of limitations both seem to apply to the facts of this case, the shorter, more specific statute will prevail." (Doc. 78, p. 11). Based on the supposed possibility that the Court might find that the two statutes "both seem to apply," Defendants embark upon a detailed discussion aimed toward persuading the Court to apply the 2-year limitations period of section 95.11(4)(a) in lieu of the 4-year period of section 95.11(3)(a). (*Id*. at pp. 11-14).

Defendants' entire argument in this regard is a red herring. It is based on the fatally flawed premise that there is a "conflict" between the two statutes, and that either of the two could apply to Plaintiffs' claims. (Doc. 78, p. 11). There is no conflict at all between the two statutes simply because they provide for differing limitations periods. The two sections are mutually

[3] As discussed, Plaintiffs' claims for negligence against Defendant Sicilia (Doc. 63, Counts III and VI) are not based on professional negligence/breach of statutory duties under Chapter 475, but upon common law negligence in his capacity as a manager at the offices of Defendant Balistreri Realty. Plaintiffs' claims against Defendant Balistreri Realty (Doc. 63, Counts IV and VII) are for vicarious liability based on the negligence of its manager, Defendant Sicilia. However, even assuming the Court were to deem the claims against Sicilia and Balistreri to be for professional negligence, the 4-year statute of section 95.11(3)(a) would nonetheless apply for given the lack of direct contractual privity between Plaintiffs and said Defendants for the reasons already discussed.

exclusive, and only one of the two statutes can be legitimately applied as a matter of law. Either there was "privity" between Plaintiffs and Defendants, in which case section 95.11(4)(a) applies; or, such "privity" did not exist, in which case section 95.11(3)(a) applies. Section 95.11(4)(a), by its own terms, expressly limits its application to cases in which "privity" exists ("However, the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.") And, both *Baskerville-Donovan* and *Llano* make it clear that where there is no such "privity" (meaning "direct contractual privity"), section 95.11(3)(a) applies, as opposed to section 95.11(4)(a).

Therefore, which statute the Court decides is applicable should not turn on the cases and principles concerning resolution of conflicts between statutes of limitations, nor should the Court's decision be based on the fact that section 95.11(4)(a) provides for a shorter limitations period than section 95.11(3)(a). Simply put, the determinative issue is whether or not there was "privity" between Plaintiffs and Defendants (again, meaning "direct contractual privity"). It is respectfully submitted that how the Court resolves that issue will necessarily determine its finding as to which statute applies to Plaintiffs' claims.

### C. Defendants' Argument that Plaintiffs Have Waived and Released Their Claims Against Them Is Unfounded

Defendants have falsely stated, under their so-called "waiver and release" argument, as follows:

> **The basis of Plaintiffs' claims is that the value of the property they purchased is diminished due to the restrictions they allege restrict their right to use the property as they wish.** This clearly falls within the language set forth in the broker liability clause of Exhibit A and, as such, they have no basis upon which to make a claim as against Defendants CAROL DUDLEY, BALISTERI REALTY, INC. and RICK SICILIA, as an employee of BALISTERI REALTY, INC.

(Doc. 78, p.17) (emphasis added).

Nowhere in the Second Amended Complaint have Plaintiffs alleged that "the value of the property they purchased [was] diminished due to the restrictions…" Nor do Plaintiffs seek any relief whatsoever against Defendants on such a basis. (See Doc. 63, Counts II, III, IV, V, VI, VII and VIII).

Defendants' reference to "the broker liability clause of Exhibit A," refers to paragraph 14 of the AS IS Residential Contract for Sale and Purchase, which is attached as Exhibit A to the Second Amended Complaint. (Doc. 63, Exh. A). Pursuant to paragraph 14, which is entitled, "Professional Advice; Broker Liability," Plaintiffs agreed that they would not rely on the "**representations**" of Broker for verification of "facts that materially affect property value." The only one of the seven (7) counts Plaintiffs have asserted against Defendants involving a representation is Count VIII by the Greggs against Defendant Dudley for Negligent Misrepresentation. All the remaining counts (Counts II, III, IV, V, VI and VII) are for *Negligence*, and are not based upon any alleged representations whatsoever of the Defendants. Accordingly, Defendants' position that Plaintiffs have waived and released their claims against Defendants pursuant to paragraph 14 of the Contract is untenable.

Even as to the claim for Negligent Misrepresentation (Count VIII), while the Greggs have alleged that they purchased the property and proceeded to make expenditures for repairs and improvements, and incurred various expenses, such as taxes, maintenance and financing costs, in justifiable reliance upon Defendant Dudley's misrepresentation (Doc. 63, ¶s 85-86), they have not alleged that the misrepresentation materially affected property value. Nor do Plaintiffs seek damages for diminution in value of the property. Accordingly, Count VIII should not be dismissed.

## III. CONCLUSION

Based on the reasons and authority set forth above, Plaintiffs respectfully request that the

Motion to Dismiss Counts II, III, IV, V, VI, VII and VIII of Plaintiffs' Second Amended Complaint by Defendants CAROL DUDLEY, RICK SICILIA and BALISTRERI REALTY, INC. be denied in its entirety, and/or that the Court grant such other or further relief as it may deem proper and just.

Respectfully submitted,

*/s/ Michael L. Feinstein*
Michael L. Feinstein, Esq.
MICHAEL L. FEINSTEIN, PA
FBN 650382
200 SE 18th Court
Fort Lauderdale, FL 33316
Telephone: (954) 767-9662
Facsimile: (954) 764-4502
Email: Michael@feinsteinlaw.net

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of October, 2018, I electronically filed the foregoing document with the Clerk of the Court using CMECF.  The foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Michael L. Feinstein*
Michael L. Feinstein, Esq.
MICHAEL L. FEINSTEIN, PA
FBN 650382
200 SE 18th Court
Fort Lauderdale, FL 33316
Telephone:  (954) 767-9662
Facsimile:   (954) 764-4502
Email:  Michael@feinsteinlaw.net